Filed 4/12/21

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| EDWARD WILLIAM KUNTZ et al., | C087967 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34201400165348CUPOGDS) |
| v. | |
| KAISER FOUNDATION HOSPITAL et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Christopher E. Krueger, Judge.  Affirmed.

The Law Office, Edward P. Dudensing, Jay P. Renneisen and Andrew J. Collins for Plaintiffs and Appellants.

Muro & Lampe, Inc., Mark A. Muro, Marion's Inn LLP, Mark Palley, Yvonne M. Pierrou and Denise Ngo for Defendants and Respondents.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of Parts I – II.

1

Plaintiffs, consisting of the estate of decedent Edward William Kuntz (decedent), his wife, and his three children, sued, among others, the Kaiser Foundation Hospital and the Permanente Medical Group, Inc. (collectively Kaiser), asserting against Kaiser causes of action sounding in elder abuse, negligent infliction of emotional distress, and wrongful death. Kaiser filed a petition to stay the action and compel arbitration. The trial court granted the petition as to the elder abuse cause of action, staying the other causes of action. Ultimately, the trial court entered judgment in favor of Kaiser.

On appeal, plaintiffs assert that (1) Kaiser failed to satisfy its burden of producing a valid agreement to arbitrate, and (2) Kaiser failed to comply with the mandatory requirements of Health and Safety Code section 1363.1 concerning the disclosure of arbitration requirements.[1]

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs commenced this action against Kaiser, among others, by filing a complaint alleging causes of action to recover damages, inter alia, for elder abuse (Welf. & Inst. Code, § 15600 et seq.), negligent infliction of emotional distress,[2] and wrongful death. Decedent's estate asserted the elder abuse cause of action, while decedent's wife and children asserted the negligent infliction of emotional distress and wrongful death causes of action. We dispense with the underlying factual allegations because they are not relevant to any issue presented on appeal.

---

[1] Further undesignated statutory references are to the Health and Safety Code.

[2] " '[T]he *negligent* causing of emotional distress is not an independent tort but the tort of *negligence* . . . .' " (*Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583, 588; accord, *Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1072.)

2

**Petition to Stay Action and Compel Arbitration**

Kaiser filed a petition to stay the action and compel arbitration. Kaiser asserted that decedent was enrolled as a member of the Kaiser Foundation Health Plan, Inc. (Health Plan), pursuant to his wife's employment under an "Agreement for Group Coverage" (CalPERS Agreement) between Health Plan and the Board of Administration of the California Public Employees' Retirement System (CalPERS). Decedent and his wife enrolled under the CalPERS Agreement by an enrollment process administered exclusively by CalPERS.

According to Kaiser, an arbitration provision required binding arbitration of all of plaintiffs' claims. The arbitration provision was contained in the versions of the CalPERS Combined Evidence of Coverage and Disclosure Form for the Basic Plan operative in 2012 and 2013, the time period relevant to plaintiffs' claims. This document is incorporated into the CalPERS Agreement.

Kaiser included a copy of the Combined Evidence of Coverage and Disclosure Form for the Basic Plan, effective January 1, 2013, as an exhibit in support of its petition. The arbitration provision in that document, under the heading, "**<u>Binding Arbitration</u>**," stated, in part, "For all claims subject to this 'Binding Arbitration' section, both Claimants and Respondents give up the right to a jury or court trial and accept the use of binding arbitration."[3] The 2012 version of the Combined Evidence of Coverage and Disclosure Form for the Basic Plan contained essentially the same arbitration provisions.

Kaiser further asserted that section 1363.1, which requires that the enrollment form signed by the subscriber contain a prominently displayed arbitration notice, did not

---

[3] We need not set forth the applicable arbitration provisions in any further detail. No issue is raised on appeal concerning, for example, the scope of disputes subject to the arbitration provisions or the definitions of Member Parties or Kaiser Parties.

apply to CalPERS enrollments.[4]  Kaiser relied on Government Code section 22869, which states that information disseminated by the CalPERS Board pursuant to section 22863 "shall be deemed to satisfy the requirements of Chapter 2.2 (commencing with Section 1340) of Division 2 of the Health and Safety Code."  Chapter 2.2, known as the Knox-Keene Health Care Service Plan Act of 1975 (Knox-Keene Act) (§ 1340), includes section 1363.1.  Kaiser asserted that CalPERS administers its own enrollment process with its own enrollment forms, and that Health Plan is not allowed to substitute its own enrollment form or modify CalPERS's enrollment forms.  Thus, because the enrollment materials at issue are disseminated pursuant to Government Code section 22869 by the CalPERS Board and not by Kaiser, those materials are deemed to satisfy the requirements of the Knox-Keene Act, and specifically section 1363.1.

In a declaration submitted with Kaiser's petition, Angela Kohls, Area Vice President, Strategic Accounts, described CalPERS's practice of providing enrollment publications to CalPERS members prior to the open enrollment period each year.  Kohls also stated that these publications were available through the CalPERS website.  The Health Benefit Summary advised CalPERS members that the Kaiser plan required binding arbitration of claims, and indicated that the applicable arbitration provision was set forth in the Kaiser Evidence of Coverage, which was posted on the CalPERS website.  Kohls also stated that, each year, prior to open enrollment, CalPERS mailed to its

---

[4]  As will be discussed in greater detail *post*, section 1363.1 addresses binding arbitration provisions included as a contract term.  Such a disclosure "shall appear as a separate article in the agreement issued to the employer group or individual subscriber and shall be prominently displayed on the enrollment form signed by each subscriber or enrollee." (§ 1363.1, subd. (b).)  Subdivision (d) of section 1363.1 requires that, "[i]n any contract or enrollment agreement for a health care service plan, the disclosure required by this section shall be displayed immediately before the signature line provided for the representative of the group contracting with a health care service plan and immediately before the signature line provided for the individual enrolling in the health care service plan."

members an open enrollment packet that included a newsletter, a Health Benefit Statement, and a business reply card for requesting a written copy of the Health Benefit Summary and other information. Further, CalPERS's agreement with Health Plan required Health Plan to mail subscribers an Evidence of Coverage after confirmation of enrollment, which Health Plan routinely did. Additionally, beginning in 2009, each year, Health Plan sent subscribers a card that could be submitted to request a copy of the new Evidence of Coverage. The card also instructed subscribers how to view and download the Evidence of Coverage online. Kohls stated that Health Plan could not unilaterally amend the Evidence of Coverage, and that any change Health Plan proposed had to be approved by CalPERS.

In another declaration, Alice E. Davis, Operations Manager of Special Accounts at Kaiser Permanente California Service Center, stated that her responsibilities included verifying eligibility of past and present members of the Health Plan. Davis stated that she accessed Health Plan's membership records for decedent. Those records indicated that decedent "was continuously enrolled as a Health Plan member, as either a subscriber or a spousal dependent, on various accounts, since 1983." Davis stated that Health Plan's records showed that, as of October 1, 2008, decedent was enrolled as a member "by way of his spouse's employment, under an agreement between Health Plan and" CalPERS. Decedent "remained continuously enrolled on that account, though with a change in sub-group, until his death." Davis stated that Health Plan had no involvement in the CalPERS enrollment process, and that CalPERS administered its own enrollment process with its own enrollment forms. She further stated that Health Plan had never been permitted to substitute its enrollment forms, or to modify CalPERS enrollment forms.

**Plaintiffs' Opposition**

Plaintiffs opposed Kaiser's petition to stay the action and compel arbitration. Plaintiffs asserted that Kaiser failed to meet its burden of producing a valid agreement to arbitrate because Kaiser had not "produced an enrollment form demonstrating that

5

[decedent] was a Kaiser member, let alone that he or anyone else connected with him agreed to arbitration." According to plaintiffs, Kaiser presented no evidence to establish that decedent or a family member was a CalPERS employee or received health care benefits through CalPERS. Plaintiffs repeatedly referred to Kaiser's failure to produce an enrollment form.

Plaintiffs further asserted that Kaiser had not complied with the mandatory requirements of section 1363.1. Again, plaintiffs emphasized that Kaiser produced no enrollment form, and therefore asserted that Kaiser failed to establish that any such enrollment form complied with the requirement of section 1363.1 that an arbitration agreement be prominently displayed on the enrollment form. Plaintiffs disputed Kaiser's contention that it was not required to satisfy the requirements of section 1363.1. Plaintiffs maintained that Kaiser failed to prove that the CalPERS board satisfied the requirements of Government Code section 22863 such that it could invoke Government Code section 22869. Additionally, plaintiffs asserted that "section 22869 does not exempt *Kaiser* from complying with . . . section 1363.1" (Italics added.) Plaintiffs further asserted that there was no evidence that CalPERS prohibited Kaiser from complying with section 1363.1, and therefore there was no evidence that compliance was impossible.

**Kaiser's Reply**

Kaiser filed a reply, asserting that it had shown the existence of a valid arbitration agreement through the authenticating declarations, the agreements between Health Plan and CalPERS, the Evidence of Coverage documents, the arbitration provision in the 2012 Evidence of Coverage, and Davis's declaration stating that decedent's membership records indicated that he had been enrolled as a Health Plan member since 1983 and had been enrolled through his wife's employment since October 1, 2008. With the reply papers, Kaiser included a supplementary declaration by Davis and a printout of decedent's membership records. In her supplemental declaration, Davis explained certain

6

data from the printout: "Attached as Exhibit A is a true and correct copy of a screen print of Health Plan's computerized membership history records screen for [decedent], with [decedent's] birth date, medical record number, Social Security number, and home address redacted for privacy. The purchaser ID number '3' indicates that [decedent] was a CalPERS enrollee. Group 3 is CalPERS. This is also shown by the reference to 'State of California.' "

Kaiser reiterated its position that the requirements of section 1363.1 do not apply to CalPERS enrollments such as decedent's. Kaiser asserted that Government Code sections 22869 and 22863 exempt CalPERS enrollments from the section 1363.1 requirements. And Kaiser again asserted it had no authority to require a different enrollment form than what CalPERS employs.

### Tentative Ruling

In a tentative ruling, the trial court granted Kaiser's motion to compel arbitration as to the elder abuse cause of action asserted against Kaiser. The court stayed proceedings as to the other causes of action.

The trial court concluded that Kaiser's records showed that decedent was continuously enrolled as a Health Plan member, either as a subscriber or a spousal dependent, since 1983. As of October 1, 2008, decedent was enrolled as a member through his wife's employment under an agreement between Health Plan and CalPERS, and he remained continuously enrolled as such until his death. The court concluded that Kaiser's evidence, including the Davis declarations and the membership records printout, were sufficient to demonstrate the existence of a valid arbitration agreement.

The trial court agreed with Kaiser that CalPERS enrollments were exempt from the requirements of section 1363.1. The court concluded that CalPERS was required to disclose certain information to each enrollee in a health benefit plan, that Kaiser did not have the ability to modify or substitute the CalPERS forms, and that the enrollment forms CalPERS employed were exempt from the requirements of section 1363.1.

7

## Oral Argument in the Trial Court

At the hearing in the trial court, plaintiffs' attorney stated he did not "see how you can input [*sic*] an agreement to arbitration when we don't have a signed agreement by anyone agreeing to any terms of anything." The trial court asked, "He was covered by CalPERS; right?", to which plaintiffs' attorney responded that he did not know whether the evidence supported that conclusion. The trial court responded: "Tell you what, I'm not going to play games with it. . . . You can file additional papers to prove what his enrollment was, or what his employment was, because the problem is . . . he either was or was not. If you want to go and try the case and try to prove that up, I'll let you do that." Plaintiffs' attorney stated his argument was that an enrollee has to sign an enrollment form, and no enrollment form was produced in this case. The court noted, "you should know, and your client should know whether or not [decedent] was a CalPERS enrollee. If you're not willing to admit that, . . . you can try that issue and they can put in evidence. . . . Maybe how it comes out is that he really was not covered, but from what I have seen, I think there is sufficient proof to show, at least on the papers, that the Kaiser plan that he was covered under was pursuant to a CalPERS employment." Plaintiffs' attorney stated his argument was more narrow: "It's just a question of whether an enrollment form was signed, because the enrollment form is what incorporates the whole evidence of coverage."

Kaiser's attorney emphasized Davis's declaration, stating that, as of October 1, 2008, decedent was enrolled as a member through his wife's employment under an agreement between Health Plan and CalPERS, and he remained continuously enrolled as such, with only a change in sub-group, until his death.

As plaintiffs' attorney continued to argue that an enrollment form was required, the trial court stated it would give plaintiffs the opportunity to prove that at trial. However, the court also stated that "I think that the evidence that was submitted is certainly sufficient to raise the issue and carry the day on a motion like this, but if the

8

plaintiff wants to challenge the custodian's rendition of the contents of various records . . . and probe further . . . ." Kaiser's attorney then emphasized the computer printout of decedent's member history and Davis's supplemental declaration.

Plaintiffs' attorney stated, "I'm not arguing so much about whether he's a CalPERS or CalPERS Kaiser member. I'm saying you've got to sign an enrollment form." The trial court asked if there were cases stating that "a CalPERS-covered member of a Kaiser plan, that every CalPERS member has to sign an enrollment form every time they switch coverage, or anything in order to be subject to the arbitration plan?" Plaintiffs' attorney stated that there was "no case on CalPERS, period."

Turning to the other issue, plaintiffs' attorney asserted that the court in its tentative ruling "has taken a very broad view of the scope of those provisions as saying that the Knox-Keene Act does not apply to CalPERS." The court responded that "22863 says that information disseminated under 22869 according to 22863[5] . . . 'shall be deemed to satisfy the requirements of Chapter 2.2.' [¶] Now, I'm not sure how they could state it any more broadly . . . ."

Plaintiffs' attorney asserted that what mattered was whether CalPERS disseminated the relevant information; "if CalPERS had disseminated information relating to the arbitration issue, then that would be subject to 22869."

Kaiser's attorney asserted that Kaiser submitted ample evidence to establish that the relevant material was disseminated pursuant to Government Code section 22863, so as to comply with the requirements of the Knox-Keene Act. Kaiser's attorney emphasized that the CalPERS Board did mention arbitration, and notified potential

[5] The trial court appears to have reversed reference to the section numbers. Government Code section 22869 provides that information disseminated pursuant to Government Code section 22863 shall be deemed to satisfy the requirements of Chapter 2.2, the Knox-Keene Act.

enrollees that there were arbitration notices in various documents and referred enrollees and potential enrollees to the Evidence of Coverage documents. Moreover, Kaiser's attorney noted the evidence concerning the distribution of the Evidence of Coverage documents, which contained the arbitration provisions. Therefore, according to Kaiser, the exemption applied. Kaiser's attorney further asserted: "[t]he regulation . . . says that the contracting agency, the employing agency has to give people the enrollment form that is prescribed by the Board.[6] That is in our re[p]ly brief. Prescribed by the Board. So that means the Board is controlling the shots here. It's controlling the information. It does so and Kaiser can't change the forms, can't change anything about that. The exemption applies."

## Ruling on the Submitted Matter

Following argument and submission of the matter, the trial court adopted the tentative ruling. The court added the following: "At oral argument, Plaintiffs argued that [Kaiser] failed to satisfy their burden to demonstrate: (1) that [decedent] was enrolled as a member of Kaiser, and (2) that CalPERS disseminated the information required by Gov't Code §22863. [¶] The Court disagrees. Here, [Kaiser] ha[s] proffered sufficient evidence showing that [decedent] was enrolled with Kaiser. (Declaration of Alice E. Davis; Supplemental Declaration of Alice E. Davis and Exhibit A [membership history printout].) [Kaiser] ha[s] also demonstrated that each year CalPERS mails or delivers enrollment applications to CalPERS members prior to the open enrollment period. (Declaration of Angela Kohls.) CalPERS also disseminates the information required by Gov't Code § 22863 via its website. (Id., Ex. F.) Thus, the Court finds that [Kaiser has] satisfied [its] burden."

---

**6** Kaiser's attorney was referring to California Code of Regulations, title 2, section 599.515, which we shall discuss in part III.D. of the Discussion, *post*.

10

**Arbitration Award, Dismissal of Remaining Causes of Action, and Judgment**

Upon granting Kaiser's motion for summary judgment as to the elder abuse cause of action, the only cause of action before him, the arbitrator issued the final award in favor of Kaiser, denying the claim asserted by plaintiffs. The trial court granted Kaiser's unopposed petition to confirm the arbitration award and lifted the stay previously imposed.

Plaintiffs filed a first amended complaint, asserting only causes of action to recover damages for negligent infliction of emotional distress and wrongful death. The trial court sustained Kaiser's demurrer without leave to amend as to the negligent infliction of emotional distress cause of action, and overruled the demurrer as to the wrongful death cause of action. Subsequently, plaintiffs voluntarily dismissed, without prejudice, the wrongful death cause of action insofar as asserted against Kaiser. Thereafter, the trial court entered judgment in favor of Kaiser.

## DISCUSSION

Plaintiffs seek reversal of the trial court's order granting Kaiser's motion to compel arbitration as to plaintiffs' elder abuse cause of action.[7] Plaintiffs seek reversal on two grounds: (1) Kaiser failed to satisfy its burden of producing a valid agreement to arbitrate, and (2) Kaiser failed to comply with the mandatory requirements of section 1363.1.

### I. Arbitration Agreements and Standards of Review

"California courts 'have consistently found a strong public policy favoring arbitration agreements.' [Citation.] 'Although "[t]he law favors contracts for arbitration

---

[7] Plaintiffs' notice of appeal stated that they appeal from the judgment of dismissal after an order sustaining a demurrer and from a judgment entered after arbitration and order sustaining demurrer. On appeal, the only issues raised by plaintiffs are addressed to the trial court's order compelling arbitration.

11

of disputes between parties" [citation], " 'there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate . . . .' " [Citations.]' [Citation.] 'The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement. [Citations.] Petitions to compel arbitration are resolved by a summary procedure that allows the parties to submit declarations and other documentary testimony and, at the trial court's discretion, to provide oral testimony. [Citations.] If the facts are undisputed, on appeal we independently review the case to determine whether a valid arbitration agreement exists.' " (*Goldman v. Sunbridge Healthcare, LLC* (2013) 220 Cal.App.4th 1160, 1169.)

"[W]e . . . review the order compelling arbitration de novo." (*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 650, citing *NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64, 71-72 & *Herman Feil, Inc. v. Design Center of Los Angeles* (1988) 204 Cal.App.3d 1406, 1414.) " ' "[T]o the extent the trial court's determination that the arbitration agreement was [valid] turned on the resolution of conflicts in the evidence or on factual inferences to be drawn from the evidence, we consider the evidence in the light most favorable to the trial court's ruling and review the trial court's factual determinations under the substantial evidence standard." ' " (*Brown v. Ralphs Grocery Co.* (2011) 197 Cal.App.4th 489, 497 (*Brown*).) " ' "Substantial evidence" is evidence of ponderable legal significance, evidence that is reasonable, credible and of solid value.' " (*Markow v. Rosner* (2016) 3 Cal.App.5th 1027, 1045.)

## II. Validity of the Arbitration Agreement

### A. Parties' Contentions

Plaintiffs assert that Kaiser failed to meet its burden of establishing that decedent agreed to arbitration. According to plaintiffs, Kaiser's efforts to force arbitration are premised on the facts that (1) decedent or a family member was a CalPERS employee, (2) decedent or a family member agreed to pay for and receive health care benefits through CalPERS, and (3) decedent or a family member elected to use Kaiser and agreed to be

12

bound by Kaiser's agreement with CalPERS with regard to the terms and conditions of the health care coverage. Plaintiffs assert that Kaiser failed to offer admissible evidence to support any of these premises. Plaintiffs claim that there is no evidence in the record to establish that decedent or a family member was a CalPERS employee or received health care benefits through CalPERS. Plaintiffs emphasize that Kaiser produced no enrollment form.

Kaiser responds that it provided ample evidence, through Davis's two declarations and the business records she authenticated, to prove decedent was enrolled as a member through CalPERS. Kaiser asserts that its evidence constituted sufficient proof and that it was not required to furnish an enrollment form, which would not reflect that the would-be enrollee was actually enrolled or the dates of enrollment. Kaiser emphasizes that the material terms of a writing were not at issue here; it was decedent's status as an enrollee that was at issue.

### B. Analysis

Kaiser offered the declaration of Davis. In it, she stated that she "accessed Health Plan's membership records for [decedent]. Health Plan's membership records show that [decedent] was continuously enrolled as a Health Plan member, as either a subscriber or a spousal dependent, on various accounts, since 1983. Health Plan's membership records show that effective October 1, 2008, [decedent] was enrolled as a member by way of his spouse's employment, under an agreement between Health Plan and [CalPERS]. He remained continuously enrolled on that account, though with a change in sub-group, until his death."

In its reply papers, Kaiser included a supplementary declaration by Davis, who repeated the foregoing representations from her original declaration. Davis also stated that, "[b]ecause CalPERS administers its own enrollment process with its own enrollment forms, Health Plan does not have an enrollment form signed by [decedent's wife] for the CalPERS enrollment beginning October 1, 2008. As explained in my previous

13

declaration, CalPERS reports enrollment information to Health Plan by electronic means rather than by providing Health Plan with copies of paper enrollment forms."

Along with the supplemental Davis declaration, Kaiser submitted a printout of decedent's computerized membership history. In their reply brief on appeal, plaintiffs assert that the printout "should be rejected as it was new evidence produced on reply." As stated in the case on which plaintiffs rely, "[n]ew evidence is generally not permitted with reply papers." (*Valentine v. Plum Healthcare Group, LLC* (2019) 37 Cal.App.5th 1076, 1089.) Plaintiffs are correct that this evidence was offered in the trial court with Kaiser's reply papers in further support of the petition to compel arbitration. However, plaintiffs failed to object, including at oral argument when Kaiser made arguments based directly on this evidence, and despite the fact that the trial court relied on this evidence in its tentative ruling. Because plaintiffs failed to raise this contention before the trial court, it is forfeited. (Evid. Code, § 353, subd. (a); *In re D.D.* (2019) 32 Cal.App.5th 985, 992 [party forfeited challenge by failing to object to the evidence in the trial court].) Moreover, even on appeal, plaintiffs failed to raise this issue in their opening brief. (*Citizens for Positive Growth & Preservation v. City of Sacramento* (2019) 43 Cal.App.5th 609, 630, fn. 9 (*Citizens for Positive Growth*), quoting *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 (*Allen*) [" '[w]e do not consider points raised for the first time in the reply brief absent a showing of good cause for the failure to present them earlier' "].)

Taking this evidence into consideration, the membership history records are what Davis relied on in making her representations concerning decedent's status as a Health Plan enrollee through CalPERS. We conclude that the foregoing was relevant and sufficient to prove decedent was enrolled with Health Plan through CalPERS at the relevant times. (See generally Evid. Code, § 351 ["[e]xcept as otherwise provided by statute, all relevant evidence is admissible"].)

14

Despite their insistence that an enrollment form was required, plaintiffs fail to identify any statutory or case law requiring a provider to produce an enrollment form to prove an individual was enrolled in a health care plan. Nor have we, in our independent research, discovered any such requirement applicable to the circumstances presented here.

Citing Evidence Code section 1523, subdivision (a), plaintiffs assert, as they did before the trial court, that the evidence Kaiser produced was insufficient under the secondary evidence rule, and consequently, Kaiser was required to produce the enrollment form. Evidence Code section 1523, subdivision (a), provides: "Except as otherwise provided by statute, oral testimony is not admissible to prove the content of a writing." However, to make its showing that decedent was a Health Plan member enrolled through CalPERS, Kaiser was not required to prove the contents of an enrollment form, which would prove only that the prospective enrollee at a particular time sought to enroll in the subject health plan.

The most probative proof of decedent's enrollment would be the provider's enrollment records, which is what Kaiser produced in reply papers with Davis's supplemental declaration. We note here that, a "printed representation of computer information or a computer program is presumed to be an accurate representation of the computer information or computer program that it purports to represent." (Evid. Code, § 1552, subd. (a).) Other than asserting that Kaiser was required to produce the enrollment form, plaintiffs did not object to the membership history records printout as inaccurate or unreliable. (*Ibid.* ["If a party to an action introduces evidence that a printed representation of computer information or computer program is inaccurate or unreliable, the party introducing the printed representation into evidence has the burden of proving, by a preponderance of evidence, that the printed representation is an accurate representation of the existence and content of the computer information or computer program that it purports to represent"].)

15

Moreover, under the Secondary Evidence Rule, subject to exceptions, "[t]he content of a writing may be proved by otherwise admissible secondary evidence." (Evid. Code, § 1521, subd. (a).) Plaintiffs did not argue in the trial court that a "genuine dispute exists concerning material terms of the writing and justice requires the exclusion," or that "[a]dmission of the secondary evidence would be unfair." (*Id.*, subd. (a)(1)-(2).) Indeed, beyond asserting that an enrollment form was required, plaintiffs did not object to the Davis declarations and the computer printout of membership history records, and, as such, have forfeited any other objection to that evidence. (Evid. Code, § 353, subd. (a); *In re D.D., supra*, 32 Cal.App.5th at p. 992.) Plaintiffs' assertion in their opening brief that Kaiser presented no admissible evidence to establish that decedent was enrolled with Health Plan through CalPERS at the relevant times is unsupported by citation to authority, forfeited, and without merit. Additionally, plaintiffs' objection to the computer printout of the membership history records as incompetent evidence was forfeited as it was not made in the trial court (*In re D.D.*, at p. 992) or in their opening brief, but instead is raised for the first time in their reply brief with no showing of good cause for the failure to raise it earlier. (*Citizens for Positive Growth, supra*, 43 Cal.App.5th at p. 630, fn. 9; *Allen, supra*, 234 Cal.App.4th at p. 52.)

Kaiser's evidence in the form of Davis's declaration and supplemental declaration and the membership history records were competent evidence, relevant and probative to prove that decedent was a Health Plan member enrolled through CalPERS at all relevant times. To the extent that the issue of decedent's status as an enrollee in Health Plan through CalPERS turned on factual issues, we conclude Kaiser's evidence constituted substantial evidence supporting the trial court's determination. (*Brown, supra*, 197 Cal.App.4th at p. 497.)

Furthermore, Kaiser submitted its Combined Evidence of Coverage and Disclosure Form for the Basic Plan. It also submitted Kohls's declaration detailing CalPERS's practices of furnishing enrollment materials and publications to members and

Health Plan's practices of providing Evidence of Coverage publications. This evidence established the existence of the arbitration provision to which decedent was subject as a Health Plan subscriber enrolled through CalPERS and the dissemination of these materials.

Kaiser met its burden of proving the existence of a valid arbitration agreement.

## III.  Section 1363.1

## A.  Plaintiffs' Contentions

Plaintiffs assert that, even if Kaiser established that decedent was a CalPERS Kaiser patient, Kaiser's motion to compel arbitration should have been denied because Kaiser failed to comply with section 1363.1. Plaintiffs assert that section 1363.1 requires, among other things, that any agreement to arbitrate must be " 'prominently displayed' " on the enrollment form and must clearly state whether the enrollee is waiving the right to a jury trial, and all disclosures must appear " 'immediately before the signature line.' " According to plaintiffs, because Kaiser did not produce any enrollment form, Kaiser has necessarily failed to establish compliance with section 1363.1.

Addressing Kaiser's position that section 1363.1 does not apply because decedent was enrolled through CalPERS, and provisions of the Government Code state that dissemination of certain information shall be deemed to satisfy the requirements of the Knox-Keene Act, plaintiffs assert Kaiser has failed to demonstrate that the Government Code provisions apply. Specifically, plaintiffs assert that Kaiser has not established that the CalPERS Board satisfied the requirements of Government Code section 22863 such that Government Code section 22869 applied. According to plaintiffs, Kaiser's evidence, in the form of a declaration stating CalPERS general practices, rather than what it actually did, does not satisfy the applicable requirements. Further, plaintiffs assert that Government Code section 22869 does not exempt *Kaiser* from complying with section 1363.1.

17

## B. Applicable Statutory Provisions

Section 1363.1 provides: "Any health care service plan that includes terms that require binding arbitration to settle disputes and that restrict, or provide for a waiver of, the right to a jury trial shall include, in clear and understandable language, a disclosure that meets all of the following conditions: [¶] (a) The disclosure shall clearly state whether the plan uses binding arbitration to settle disputes, including specifically whether the plan uses binding arbitration to settle claims of medical malpractice. [¶] (b) The disclosure shall appear as a separate article in the agreement issued to the employer group or individual subscriber and shall be prominently displayed on the enrollment form signed by each subscriber or enrollee. [¶] (c) The disclosure shall clearly state whether the subscriber or enrollee is waiving his or her right to a jury trial for medical malpractice, other disputes relating to the delivery of service under the plan, or both, and shall be substantially expressed in the wording provided in subdivision (a) of Section 1295 of the Code of Civil Procedure. [¶] (d) In any contract or enrollment agreement for a health care service plan, the disclosure required by this section shall be displayed immediately before the signature line provided for the representative of the group contracting with a health care service plan and immediately before the signature line provided for the individual enrolling in the health care service plan."

Government Code section 22863, subdivision (a), provides: "The [CalPERS] board[8] shall make available to employees and annuitants eligible to enroll in a health benefit plan information that will enable the employees or annuitants to exercise an informed choice among the available health benefit plans. Each employee or annuitant enrolled in a health benefit plan shall be issued an appropriate document setting forth or summarizing the services or benefits to which the employee, annuitant, or family

---

[8] " 'Board' means the Board of Administration of the Public Employees' Retirement System" (Gov. Code, § 22762), or the CalPERS Board.

18

members are entitled to thereunder, the procedure for obtaining benefits, and the principal provisions of the health benefit plan."

Government Code section 22869 provides: "Information disseminated by the board pursuant to Section 22863, and compliance with regulations of the board adopted pursuant to subdivision (a) of Section 22846 and Sections 22800 and 22831, shall be deemed to satisfy the requirements of Chapter 2.2 (commencing with Section 1340) of Division 2 of the Health and Safety Code." Section 1363.1 is part of Chapter 2.2.

## C. Principles of Statutory Interpretation

" ' "Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them their usual and ordinary meaning. [Citation.] The statute's plain meaning controls the court's interpretation unless its words are ambiguous." [Citations.] ' " (*People v. Lucero* (2019) 41 Cal.App.5th 370, 394-395, quoting *People v. Arias* (2008) 45 Cal.4th 169, 177; accord, *Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1183-1184.)

## D. Analysis

There is no ambiguity here. The plain language of Government Code section 22869 provides that information disseminated by the CalPERS board pursuant to Government Code section 22863 "shall be deemed to satisfy the requirements of Chapter 2.2 (commencing with Section 1340) of Division 2 of the Health and Safety Code " – the Knox-Keene Act. (Gov. Code, § 22869.) Section 1363.1 is part of Chapter 2.2, the Knox-Keene Act. (§ 1340 ["[t]his chapter," which includes section 1363.1, "shall be known . . . as the Knox-Keene Health Care Service Plan Act of 1975"].) Thus, under the plain meaning of Government Code section 22869, information disseminated by the CalPERS Board pursuant to Government Code section 22863 shall be deemed to satisfy the requirements of, among other things, section 1363.1.

19

Kohls, Area Vice President, Strategic Accounts, stated in her declaration that CalPERS provided enrollment publications to CalPERS members prior to open enrollment. These publications were also available on the CalPERS website. The Health Benefit Summary advised CalPERS members that the Kaiser plan required binding arbitration of claims, and indicated that the applicable arbitration provision was set forth in the Kaiser Evidence of Coverage, which was posted on the CalPERS website. Kohls also stated that, each year, prior to open enrollment, CalPERS mailed to its members an open enrollment packet that included a newsletter, a Health Benefit Statement, and a business reply card for requesting a written copy of the Health Benefit Summary and other information. Further, CalPERS's agreement with Health Plan required Health Plan to mail subscribers an Evidence of Coverage after confirmation of enrollment. Beginning in 2009, each year, Health Plan sent subscribers a card for use in requesting a copy of the new Evidence of Coverage. The card also instructed subscribers how to view and download the Evidence of Coverage online. Health Plan could not unilaterally amend the Evidence of Coverage.

Davis, in her declaration, stated that Health Plan was not involved in the CalPERS enrollment process, and that CalPERS administered its own enrollment process with its own enrollment forms. She further stated that Health Plan had never been permitted to substitute its enrollment forms, or to modify CalPERS enrollment forms.

According to Kohls, the material that CalPERS disseminates to would-be and current enrollees, constitutes information disseminated pursuant to Government Code section 22863, subdivision (a), the text of which is set forth in part III.B. of the Discussion, *ante*.

We further note that the applicable regulations (Cal. Code Regs., tit. 2, § 599.500 et seq.) provide, with regard to enrollment, that the "contracting agency shall make available to its employees and annuitants information concerning health benefit plans and procedures for enrollment *and the enrollment forms prescribed by the Board*." (Cal.

20

Code Regs., tit. 2, § 599.515, subd. (c), italics added.)  Further, as Kaiser notes, the applicable regulations define " '[e]nroll' " as "to file *with the employing office* a properly completed Health Benefits Plan Enrollment Form electing to be enrolled in a health benefits plan," and define " '[e]mploying office,' " in pertinent part, as "any office *of the state or contracting agency* to which jurisdiction and responsibility for health benefits action for the employee concerned have been delegated."  (Cal. Code Regs., tit. 2, § 599.500, subds. (f), (b), italics added.)  As asserted by Kaiser, the regulatory scheme indicates that Kaiser has no option to unilaterally insist on any enrollment materials or collect enrollment forms, and Davis's and Kohls's declarations support this view.  Because the enrollment forms are those prescribed by the CalPERS Board, as Kaiser asserts, it would not be possible, nor necessary, for Kaiser to comply with the requirements of section 1363.1.

Thus, the trial court correctly concluded that the plain and unambiguous language of Government Code section 22869 exempts CalPERS enrollments from the requirements of section 1363.1 where the CalPERS Board disseminates information pursuant to Government Code section 22863.  We further conclude that the evidence submitted by Kaiser established that decedent's enrollment with Kaiser was through CalPERS, and that, in connection with that enrollment, the CalPERS Board disseminated relevant information pursuant to Government Code section 22863, which included, among other things, notice of the arbitration requirement.  Accordingly, we conclude that the trial court correctly determined that the arbitration agreement was not invalid for failure of Kaiser to satisfy the requirements of section 1363.1.[9]

---

**9**  Kaiser filed a request that we take judicial notice of documents pertaining to the legislative history of section 1363.1.  Decision on the request was deferred pending calendaring and assignment of the panel.  We deny Kaiser's request for judicial notice on the ground that the subject documents are not necessary to our resolution of the issues presented on appeal.  (*San Diego City Firefighters, Local 145 v. Board of Administration*

21

We disagree with plaintiffs' contentions that Kaiser has not offered sufficient evidence to demonstrate that CalPERS disseminated information, including the arbitration notification, pursuant to Government Code section 22863, and that it has not laid an adequate foundation for this evidence. We do not agree that, to make this showing, Kaiser was required to produce a declaration from a CalPERS employee. Rather, the declaration of Kohls, Area Vice President, Strategic Accounts, describing CalPERS's practices in connection with Health Plan enrollments of providing enrollment publications to CalPERS members, was sufficient to make this showing. She stated that her statements in the declaration, including her descriptions of CalPERS's and Health Plan's practices concerning the dissemination of relevant information to enrollees and would-be enrollees, was within her personal knowledge.

Also unavailing are plaintiffs' assertions that Kaiser's disclosures in the CalPERS Agreement are deficient for failure to comply with section 1363.1, and that "Kaiser's interpretation of these government code sections makes no sense when one considers that 1363.1 requires Kaiser to make the disclosures not only to the enrollees but also directly to CalPERS." Assuming this is relevant to plaintiffs' circumstances and that they have standing to raise it, the section 1363.1, subdivision (b) requirement that the disclosure be "prominently displayed" applies to the section 1363.1 enrollment form, not the contract between the health care service plan and the employer group. Subdivision (b)'s only requirement applicable to an agreement between the health care service plan and the employer group is that the disclosure "appear as a separate article in the agreement . . . ." (§ 1363.1, subd. (b).) The arbitration provision is indeed a separate article, article 9.7, in the CalPERS Agreement.

_____

*of San Diego City Employees' Retirement System* (2012) 206 Cal.App.4th 594, 600, fn. 3 [judicial notice denied because "the document at issue is not necessary to our resolution of this appeal"].)

22

Subdivision (d) of section 1363.1 requires that, in the contract, the disclosure "shall be displayed immediately before the signature line provided for the representative of the group contracting with a health care service plan . . . ." (§ 1363.1, subd. (d).)  On the signature page of the CalPERS Agreement, immediately before the lines reciting that the parties were executing the agreement by their respective officers' signatures, appears the following disclosure:  "By entering this Agreement, the parties agree to have certain member disputes (including medical malpractice) decided by neutral, binding arbitration. Both of the parties recognize that this may constitute a waiver of the right to a jury or court trial for these disputes for members who elect to enroll in the plan.  See Section 9. General Provisions, Item 9.7. Arbitration, and Attachment 1, the Combined Evidence of Coverage & Disclosure Form for the Basic Plan and the Managed Medicare Plan of this Agreement."  We conclude that this complies with the requirement in section 1363.1, subdivision (d), that, in the contract, the arbitration disclosure is displayed immediately before the signature line.  (Contra, *Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1424-1428 [three paragraphs intervene between the arbitration provision on the enrollment form and the signature line; enrollment form failed to comply with requirement of section 1363.1, subd. (d)]; *Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44, 62 [arbitration provision on enrollment form not immediately before signature line, but, instead, immediately before signature line is a paragraph authorizing the release of medical information and the arbitration provision is on the left side of the form while the signature line is on the right side].)

Thus, Kaiser's disclosures to CalPERS comply with the requirements of section 1363.1.  Plaintiffs fail to adequately and persuasively explain why the fact that Government Code section 22869 says nothing about the disclosures that must be made by Kaiser to CalPERS and does not act to remedy any deficiencies in agreements between health plans and CalPERS means that Kaiser's, and our, interpretation of these provisions "makes no sense."  Government Code section 22869 is not addressed to agreements

23

between health plans and CalPERS; it is concerned with information disseminated by the CalPERS Board to employees and annuitants. (§§ 22869, 22863.)

As they did in the trial court, plaintiffs rely on *Medeiros v. Superior Court* (2007) 146 Cal.App.4th 1008 (*Medeiros*). However, that case is inapposite. In that case, the writ petitioners (Medeiros) challenged the trial court's order compelling them to arbitrate a dispute with their health insurer, Health Net. (*Id*. at p. 1010.) They asserted that the arbitration provision was not enforceable because Health Net failed to comply with the requirements of section 1363.1. Health Net countered that, "as a member of a group health plan negotiated between Health Net and Medeiros's employer," Medeiros was not entitled to the protection of these section 1363.1 requirements, "the requirements of section 1363.1 do not apply to the 'benefits election form' Medeiros signed and submitted to his employer in order to enroll in the group health plan," and "section 1363.1's disclosure obligations would only have been triggered if [Health Net] had required Medeiros to sign an 'enrollment form' in order to enroll in the health plan." (*Medeiros*, at p. 1011.) The Court of Appeal reversed the trial court's order compelling Medeiros to arbitrate and directed the court to issue an order denying Health Net's motion to compel arbitration. (*Id*. at p. 1019.) The court determined that the requirements of section 1363.1 were mandatory, and that Medeiros "was entitled to the same disclosure from Health Net concerning the arbitration provisions as any individual subscriber who signed an enrollment form." (*Medeiros*, at p. 1019.)

*Medeiros* is not helpful to plaintiffs. CalPERS was not involved in *Medeiros* and, as such, Government Code sections 22863 and 22869 had no applicability. Under the circumstances of this case, these sections are dispositive to plaintiffs' claim concerning section 1363.1.

Plaintiffs also rely on *Consumer Watchdog v. Department of Managed Health Care* (2014) 225 Cal.App.4th 862, 880 (*Consumer Watchdog*), for the proposition that "[r]ecent case law has explicitly held that CALPERS is indeed subject to certain

24

provisions of the Knox-Keene Act," and that Kaiser reads Government Code section 22869 too broadly. Without delving into the rather complicated details of *Consumer Watchdog*, while plaintiffs may correctly cite *Consumer Watchdog* for the proposition that a state government agency is "subject to certain provisions of the Knox-Keene Act," that fact does not help plaintiffs. Kaiser is not contending that no aspect of the Knox-Keene Act applies to enrollments through CalPERS, a contention to which *Consumer Watchdog* could theoretically be relevant. Rather, Kaiser is simply relying on the express language of Government Code section 22869. The plain language of that section controls, and provides that "[i]nformation disseminated by the [CalPERS] board pursuant to Section 22863 . . . shall be deemed to satisfy the requirements of" the Knox-Keene Act. This is not to say that CalPERS *is not subject to any provisions of the Knox-Keene Act*, an issue we need not address here. Our more narrow conclusion, based on the plain language of the relevant Government Code provisions, is that information the CalPERS Board disseminates pursuant to Government Code section 22863 shall be deemed to satisfy those requirements of the Knox-Keene Act, including those found in section 1363.1, applicable to the disseminated information. (Gov. Code, § 22869.) *Consumer Watchdog* is silent on, and does not undermine, this proposition, and does not support plaintiffs' position to the extent that they assert that a CalPERS-administered plan must satisfy the requirements of section 1363.1.

Ultimately, we agree with Kaiser that, pursuant to the plain language of Government Code section 22869, the information that CalPERS disseminated pursuant to Government Code section 22863, which includes the arbitration provisions and disclosures, shall be deemed to satisfy the requirements of the Knox-Keene Act. None of the legal or factual arguments advanced by plaintiffs persuade us otherwise. Accordingly, we conclude that plaintiffs' contention that the order to compel arbitration of the elder abuse claim should be reversed for Kaiser's failure to satisfy the requirements of section 1363.1 is without merit.

25

## DISPOSITION

The judgment is affirmed.  Kaiser is awarded its costs on appeal.  (Cal. Rules of Court, rule 8.278, subd. (a)(1), (2).)

/s/
MURRAY, J.

We concur:

/s/
ROBIE, Acting P. J.

/s/
KRAUSE, J.