Filed 7/2/19; Certified for Publication 7/25/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ROY VALENTINE, Individually and as Adminsitrator, etc., et al.,<br><br>       Plaintiffs and Respondents,<br><br>  v.<br><br>PLUM HEALTHCARE GROUP, LLC, et al.,<br><br>       Defendants and Appellants. | C080940<br><br>(Super. Ct. No. 34201500181252CUPOGDS) |

The owners and operators of a skilled nursing facility contend the trial court erred when it denied their petition to compel arbitration. They attempted to enforce arbitration in this action for elder abuse and wrongful death brought by a decedent through her husband as successor in interest, her husband individually, and their children. Appellants claimed the successor had signed the arbitration agreements as the decedent's authorized agent. The trial court determined that although the successor did not sign the agreements

1

as the decedent's agent, he expressly bound himself to arbitrate all claims he held individually and as the successor in interest. As a result, the decedent's claim for elder abuse and the husband's individual claim for wrongful death were subject to arbitration. However, the court denied the petition because the children's claims were not subject to arbitration, and allowing the arbitration and the litigation to proceed concurrently could result in inconsistent findings of fact and law.

We affirm the judgment.

## FACTS AND PROCEEDINGS

### A.    *Signing the arbitration agreements*

Defendants Plum Healthcare Group, LLC, and White Fir Holdings, LLC, own and operate Midtown Oaks Post-Acute (Midtown), a skilled nursing facility. On January 13, 2014, Lila Valentine was admitted to Midtown for "rehab" after she fell and broke her right shoulder. The admission records identified Lila's daughter, Darleen Valentine, as Lila's responsible party and Lila's husband, Roy Valentine, as an emergency contact and the primary financial contact.

On January 15, 2014, Juillet Winter, Midtown's admission coordinator, contacted Darleen about the signing of the admission documents. Winter said Lila was unable to sign the documents "due to her shoulder injury and her episodes of confusion." Darleen told Winter she was not in the area and to have her father, Roy, sign the papers.

On January 19, 2014, Roy signed the admission documents, including two arbitration agreements. Lila was present when Roy signed the papers, and she did not object to him signing the arbitration agreements on her behalf.

Roy recalled signing some documents when Lila was admitted to Midtown. A person from the facility told him he needed to sign some admission forms for his wife. The person did not say what the forms were, that they involved arbitration, or that there was a choice in the signing of the documents. The person never asked Roy if Lila was

2

capable of signing the documents or discussed with him that the documents needed to be signed by Lila if she was capable. Roy asserts that had this issue been raised, he "certainly would have told" the facility employee that Lila was capable of making her own health care decisions.

While Roy signed the papers, it appeared to him that Lila was not aware of, or involved in, the process. The person from the facility never told Lila anything about the paperwork, and she did not ask Lila to sign the documents. The person never asked Lila if it was okay for Roy to sign the admission documents for her. Roy did not read the paperwork, nor did he talk to Lila about it.

Roy signed two arbitration agreements; one for arbitrating medical malpractice claims and the second for arbitrating all other claims, including wrongful death and elder abuse. Both agreements state they are binding on the parties and the parties' "heirs, representatives, executors, administrators, successors, and assigns[.]"

In addition, both agreements contain a clause that attempts to bind the resident's representative to arbitrate the resident's claims and the representative's individual claims if the representative signs the agreement instead of the resident. The clause reads: "By the signing [of] this agreement the resident intends to express that I have full authority to act as the resident's agent in making healthcare decisions for the resident. I have full and express authority as the resident's agent to waive the resident's right to a jury trial and enter into this arbitration agreement. I agree that any claims that I may have as a successor in interest, heir, or representative of the resident or as an individual will be subject to the binding arbitration agreement set forth in this contract." In both agreements, Roy signed his name immediately following this paragraph as Lila's representative.

Each agreement also authorized the resident and the resident's representative to rescind the agreement within 30 days of execution.

Lila did not sign either agreement.

B.    *Lila's care*[1]

Upon admission to Midtown, Lila was oriented and functional.  She was continent of urine and bowel.  Prior to her admission, she lived independently at home with Roy.

On March 13, 2014, two months after admission, Lila began exhibiting symptoms of a urinary tract infection.  Treatment was not started until four days later, March 17.

A month later, on April 15, 2014, the urinary tract symptoms recurred, and it was noted she had "increased confusion" with her symptoms.  Antibiotic treatment was not started for two days until April 17.

On May 2, 2014, Lila again complained of urinary tract infection symptoms.  Urinalysis test results received two days later showed "mixed flora" bacteria.  However, Midtown staff did not treat the infection and did not monitor Lila.

One week later, on May 9, 2014, Lila had loose stool and complained of a stomach ache.  The treating nurse took no steps to determine what was causing Lila's symptoms.  Instead, she wrote in Lila's chart that the loose stool "didn't smell like a c. diff," knowing a urinary tract infection with "c. diff" could not be diagnosed merely by smelling stool.  Although Lila's symptoms were a "patent sign" of sepsis, staff gave her a narcotic painkiller and Imodium for diarrhea without attempting to determine whether Lila had an infection.  For the rest of the weekend, the nursing staff did not monitor Lila's symptoms even though her condition changed.

On May 11, 2014, Lila had a fever of 100.5 degrees at 2:20 p.m., which subsided to 100 degrees by 7:00 p.m.  The staff ordered laboratory tests.  The results came back by 10:10 p.m. that evening, but the nurses simply "endorsed" the results to the night shift.  At 1:39 a.m., May 12, 2014, Lila's family asked about the lab results.  The physician's assistant then ordered a shot of antibiotics.  No one monitored Lila's conditions.

---

[1]    This discussion is based on the allegations contained in plaintiffs' complaint.

No further entry was made in Lila's medical chart until approximately 10 hours later at 11:29 a.m., when the director of nurses wrote a note about roommate compatibility. Lila's condition changed, but again no one monitored her. Despite her symptoms of sepsis and complaints of abdominal pain, staff did not call an ambulance until approximately 12:30 p.m. after they found Lila looking "acutely ill."

Lila arrived by ambulance at Sutter General Hospital at 12:50 p.m. She was in septic shock, but Sutter staff failed to examine her timely or treat her for sepsis. They did not administer antibiotics for several hours. Despite Lila's abnormal blood pressure and heart rate, Sutter nurses did not notify any physician of Lila's deteriorating condition, monitor Lila, or care for her over a six-and-a-half-hour period. Lila went into cardiac arrest three times before she was pronounced dead at 3:30 a.m., May 13, 2014.

C.    *This action*

Roy, as Lila's successor in interest and in his individual capacity, Darleen, and two additional children, Eileen Tworoger and Randy Valentine, filed this action. As successor in interest, Roy asserted causes of action against defendants for elder abuse (Welf. & Inst. Code, § 15600 et seq.) and violation of the Patients' Bill of Rights (Health & Saf. Code, § 1430, subd. (b); see Cal. Code Regs., tit. 22, § 72527). Roy in his individual capacity and Darleen, Eileen, and Randy asserted causes of action for wrongful death caused by reckless neglect and abuse. Darleen also alleged a cause of action for negligent infliction of emotional distress.[2]

Defendants petitioned the trial court to compel arbitration. The court found the arbitration agreements were valid as to Roy, but it ultimately denied the petition. The agreements were valid as to Roy not because he was Lila's agent, but because when he

---

[2]    The plaintiffs' similar causes of action against the owners and operators of Sutter General Hospital are not before us.

signed them, he expressly agreed that any claims he had as a successor in interest and as an individual would be subject to binding arbitration. The court found Roy "did not sign those agreements as Lila's representative or agent in an attempt to bind Lila." Even if he had, that fact according to the court would be immaterial since Lila through her estate was not asserting any claims on her own behalf. Roy agreed to arbitrate "his own claims as a successor in interest."

The court, however, found the arbitration agreements were not binding on the children's wrongful death claims. None of the children signed the agreements, and Lila could not bind them to arbitrate their claims. Under the rule of *Ruiz v. Podolsky* (2010) 50 Cal.4th 838, 841 (*Ruiz*), as applied by this court in *Bush v. Horizon West* (2012) 205 Cal.App.4th 924, 929, a patient of a skilled nursing facility can bind her heirs to arbitrate wrongful death claims arising only from medical malpractice, but not from elder abuse. The children did not allege medical malpractice or professional negligence.

Even though the court determined that Roy's successor and individual claims were subject to arbitration, it denied the petition to compel. It foresaw the possibility of conflicting rulings on common issues of law or fact if the children's wrongful death claims were litigated and Roy's wrongful death and elder abuse claims were arbitrated. Pursuant to discretion granted it in such a circumstance by Code of Civil Procedure section 1281.2 (section 1281.2), the court declined to enforce the arbitration agreement.[3]

## DISCUSSION

Under section 1281.2, subdivision (c), "a court may stay or refuse to compel arbitration of all or part of an arbitrable controversy when: (1) '[a] party to the arbitration agreement is also a party to a pending court action . . . with a third party, arising out of

---

**3** The court accepted defendants' assertion that they had settled the claim for violation of the Patients' Bill of Rights. It also found Darleen's claim for negligent infliction of emotional distress was not subject to arbitration because Darleen was not a party to the arbitration agreement. Defendants do not challenge these rulings.

6

the same transaction or series of related transactions,' and (2) 'there is a possibility of conflicting rulings on a common issue of law or fact.' (§ 1281.2(c).) For purposes of the statute, a third party is one who is neither bound by nor entitled to enforce the arbitration agreement. (*Thomas v. Westlake* (2012) 204 Cal.App.4th 605, 612.) Section 1281.2(c) ' "addresses the peculiar situation that arises when a controversy also affects claims by or against other parties not bound by the arbitration agreement." ' (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 393.)" (*Daniels v. Sunrise Senior Living, Inc.* (2013) 212 Cal.App.4th 674, 679-680.)

Defendants contend the trial court had no discretion to deny their petition to compel because except for the Patients' Bill of Rights claim and Darleen's claim for emotional distress, all of the plaintiffs' claims are subject to arbitration. First, they argue the survivor claim for elder abuse and Roy's individual claim for wrongful death are subject to arbitration because Roy signed the arbitration agreements as Lila's agent as well as for himself.

Second, defendants contend the children's wrongful death claims are also subject to arbitration. The arbitration agreements' application to heirs and Roy's signing them as Lila's agent bound the children's claims to arbitration under *Ruiz*. As already stated, under *Ruiz*, a patient at a skilled nursing facility or her agent may bind her heirs to arbitrate wrongful death actions that arise from medical malpractice or professional negligence. Defendants argue the children's allegations of wrongful death allege professional negligence, not elder abuse, and are thus subject to arbitration.

Defendants assert that because each plaintiff's elder abuse and wrongful death claims are subject to arbitration, the court had no discretion under section 1281.2 or otherwise to deny arbitration. They ask us to reverse the court's ruling and direct the court either to order all claims against them to arbitration or allow arbitration of the elder abuse and wrongful death claims to proceed first.

We conclude the trial court did not abuse its discretion. Defendants did not establish that Roy signed the arbitration agreements as Lila's agent. As a result, he could not bind the children to arbitrate their wrongful death claims. Because the children would litigate their claims, the court was within its discretion to deny arbitration under section 1281.2 to prevent conflicting rulings on common issues of law and fact.

"The party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement. (*Garrison v. Superior Court* (2005) 132 Cal.App.4th 253, 263 (*Garrison*); *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972; *Pagarigan v. Libby Care Center, Inc.* (2002) 99 Cal.App.4th 298, 301 [ ].) Petitions to compel arbitration are resolved by a summary procedure that allows the parties to submit declarations and other documentary testimony and, at the trial court's discretion, to provide oral testimony. (*Engalla, supra*, 15 Cal.4th at p. 972; Code Civ. Proc., §§ 1281.2, 1290.2.) If the facts are undisputed, on appeal we independently review the case to determine whether a valid arbitration agreement exists. (*Garrison, supra*, 132 Cal.App.4th at p. 263; *Buckner v. Tamarin* (2002) 98 Cal.App.4th 140, 142].)" (*Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 586 (*Flores*).)

"As the *Flores* court explained, 'Generally, a person who is not a party to an arbitration agreement is not bound by it. (*Buckner v. Tamarin, supra*, 98 Cal.App.4th at p. 142.) However, there are exceptions. For example, a *patient* who signs an arbitration agreement at a health care facility can bind relatives who present [certain] claims arising from the patient's treatment. (*Mormile v. Sinclair* (1994) 21 Cal.App.4th 1508, 1511-1516; *Bolanos v. Khalatian* (1991) 231 Cal.App.3d 1586, 1591.) Further, a person who is authorized to act as the patient's *agent* can bind the patient to an arbitration agreement. (*Garrison, supra*, 132 Cal.App.4th at pp. 264-266; see *Buckner, supra*, 98 Cal.App.4th at p. 142.)' (*Flores, supra*, 148 Cal.App.4th at p. 587, fn. omitted.)" (*Goldman v. SunBridge Healthcare, LLC* (2013) 220 Cal.App.4th 1160, 1169 (*Goldman*), original italics.)

Defendants mistakenly believe the trial court found on disputed facts that Roy bound Lila to the arbitration agreements as her agent. The trial court expressly found Roy was *not* acting as Lila's authorized agent when he signed the arbitration agreements. It stated Roy "did not sign those agreements as Lila's representative or agent in an attempt to bind Lila." Substantial evidence supports the trial court's finding.

"The existence of an agency relationship is a factual question for the trier of fact whose determination must be affirmed on appeal if supported by substantial evidence. (*Violette v. Shoup* (1993) 16 Cal.App.4th 611, 619; *Inglewood Teachers Assn. v. Public Employment Relations Bd.* (1991) 227 Cal.App.3d 767, 780; *Wickham v. Southland Corp.* [(1985) 168 Cal.App.3d 49,] 55.) 'Only when the essential facts are not in conflict will an agency determination be made as a matter of law.' (*Wickham v. Southland Corp., supra*, 168 Cal.App.3d at p. 55; see *Violette v. Shoup, supra*, at p. 619.)" (*Garlock Sealing Technologies, LLC v. NAK Sealing Technologies Corp.* (2007) 148 Cal.App.4th 937, 965.)

"An agent is one who represents another, called the principal, in dealings with third persons." (Civ. Code, § 2295.) In California, agency is "either actual or ostensible." (Civ. Code, § 2298.) An agency is actual "when the agent is really employed by the principal." (Civ. Code, § 2299.) Actual authority "is such as a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess." (Civ. Code, § 2316.)

An agency is ostensible "when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." (Civ. Code, § 2300.) "Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." (Civ. Code, § 2317.)

There is no evidence Lila intentionally designated Roy as her agent with authority to enter arbitration agreements on her behalf. Thus, if an agency relationship exists, it is

9

one based on Lila's want of ordinary care that caused either Roy or defendants to believe he had the authority to bind Lila to arbitration.

Defendants contend the evidence shows Roy believed he was Lila's actual agent because he and Lila were married, and he signed the agreements on the line marked "Resident's Representative" beneath the provision stating his signature indicated he had Lila's authority as her agent to enter into arbitration agreements for her.

We are not persuaded. Although Roy signed the agreements apparently believing he could do so, "the fact of belief is not enough. It must be shown that the belief was engendered by conduct of the principal. To hold otherwise would give any agent, not the authority, but the naked power to bind his principal to any contract within the general scope of his duties, however fantastic or detrimental to the principal's interest such contract may be." (*South Sacramento Drayage Co. v. Campbell Soup Co.* (1963) 220 Cal.App.2d 851, 856-857.) That he signed as Lila's "representative" did not cast him in the status of agent unless Lila's conduct engendered his belief and actions. (*Goldman, supra*, 220 Cal.App.4th at p. 1176.)

"Before recovery can be had against the principal for the acts of an ostensible agent, three requirements must be met: The person dealing with an agent must do so with a reasonable belief in the agent's authority, such belief must be generated by some act or neglect by the principal sought to be charged and the person relying on the agent's apparent authority must not be negligent in holding that belief. (*Associated Creditors' Agency v. Davis* (1975) 13 Cal.3d 374, 399; *Hill v. Citizens Nat. Trust & Sav. Bk.* (1937) 9 Cal.2d 172, 175-176.) Ostensible agency cannot be established by the representations or conduct of the purported agent; the statements or acts of the principal must be such as to cause the belief the agency exists. (*Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1438, fn. 11; *Lee v. Helmco, Inc.* (1962) 199 Cal.App.2d 820, 834.) ' "Liability of the principal for the acts of an ostensible agent rests on the doctrine of 'estoppel,' the essential elements of which are representations made by the principal,

10

justifiable reliance by a third party, and a change of position from such reliance resulting in injury. [Citation.]" [Citation.]' (*Kaplan v. Coldwell Banker Residential Affiliates, Inc.* (1997) 59 Cal.App.4th 741, 747.)" (*J.L. v. Children's Institute, Inc.* (2009) 177 Cal.App.4th 388, 403-404.)

Nothing Lila did could reasonably cause defendants to believe Roy was authorized to execute arbitration agreements for her. Juillet Winter, defendant's employee, testified Lila could not sign the forms because of her injured shoulder and her "periods of confusion." Nothing in the record explains what Winter meant by "periods of confusion," whether she observed such periods, or whether she was qualified to make any kind of determination about Lila's capacity. Under Probate Code section 4657, a patient is presumed to have the capacity to make a health care decision, and a decision to the contrary must be made by a physician in writing. (Prob. Code, §§ 4657, 4658, 4732.) There is no evidence Winter is a physician.

Roy testified Lila was capable to make her own health care decisions. She was present when he signed the documents, but she was unaware he was signing them or of what they were. Winter never told Lila about the paperwork, asked her if she could sign them, or asked her if Roy had authority to sign them as her agent.

Instead, Winter relied on *Darleen's* direction to have Roy sign the forms. There is no evidence in the record, however, that establishes Darleen had the authority either to execute arbitration agreements as Lila's agent or, if she had that authority, to delegate it to Roy.

According to Winter, Darleen was Lila's "responsible party." Nothing in the record defines that term. In the health care context, the term does not establish agency to execute arbitration agreements. "Facially, the status of agent, legal representative, or responsible party would not arise merely because of kinship. Using the ordinary meaning of these terms (see *Pang v. Beverly Hospital, Inc.* (2000) 79 Cal.App.4th 986, 994), an agent is a person to whom the principal has delegated authority; a legal representative is a

11

person who has acquired authority through the legal process (i.e., a guardian or conservator); and a responsible party in the health care context is a person who assumes personal liability for the patient's bills (*Podolsky v. First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 645)." (*Flores, supra*, 148 Cal.App.4th at pp. 592-593.) Darleen's assumption of financial liability for Lila's bills does not establish Lila authorized Darleen to execute arbitration agreements as her agent.

Defendants nonetheless argue the evidence establishes Roy was Lila's ostensible agent. They contend that although Lila could not sign the agreements due to her shoulder injury, she maintained the mental capacity to consent (despite Winter's testimony), was present when Roy signed the agreements, had a sufficient opportunity to object, but instead remained silent. Defendants claim Lila's silence is "compelling" evidence.

Contrary to defendants' argument, Lila's silence in this instance was insufficient to convey ostensible authority to Roy to execute arbitration agreements on her behalf. Occasionally, where " ' "the principal knows that the agent holds himself out as clothed with certain authority, and remains silent, such conduct on the part of the principal may give rise to liability. [Citation.]" [Citation.]' [Citations.]" (*Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 426-427.)

However, in those instances, it was reasonable for the third party to rely on the purported agent despite his silence due to a historical relationship or course of conduct. (See *Leavens v. Pinkham & McKevitt* (1912) 164 Cal. 242, 245-249 [manager was packing house's ostensible agent to purchase fruit based on his prior authorized purchases from plaintiff and others and the company's failure to indicate in any manner the manager lacked authority in this instance]; *Chicago Title Ins. Co. v. AMZ Ins. Services, Inc., supra*, 188 Cal.App.4th at pp. 408-409, 426-427 [ostensible agency existed where insurance agent had previously bound insurer to issue insurance 30 to 40 times despite express agreement denying agency relationship]; *Gulf Ins. Co. v. TIG Ins. Co.* (2001)

86 Cal.App.4th 422, 435-437, 439 [insurance wholesaler was carrier's ostensible agent where insurance broker had historically filed claims with wholesaler].)

Here, there is no past behavior by Lila or a prior relationship or course of conduct with her on which defendants could rely to establish Roy was her agent with authority to bind her to arbitration. And agency cannot be implied from the marriage relationship alone. (*Flores, supra*, 148 Cal.App.4th at p. 589.) Her silence in this instance communicated nothing.

Defendants contend Lila on at least one prior occasion requested to them that Roy sign a document on her behalf. To support this contention, defendants submitted with their reply brief at trial a document entitled Physicians Orders for Life-Sustaining Treatment (POLST), dated December 2013. Someone wrote on the document, "resident has capacity but cannot sign – requested husband to sign." The document was submitted under a declaration signed by defendant's attorney, who attested only that the document was a true and correct copy. Defendants claim this evidence supports a finding that Roy was Lila's agent.

Plaintiffs objected to the document, but the trial court did not rule on the objection. In that circumstance, we presume the evidence was admitted and considered by the court, but the objection is preserved for our review on appeal. (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534.) We find the trial court erred in admitting the evidence. New evidence is generally not permitted with reply papers. (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1537-1538.) More importantly, defendants laid no foundation to support the evidence. There is no authentication of the signatures or the handwritten note, no eyewitness testimony of the document's execution or modification, no description of how the document came into counsel's possession, and no evidence the document was seen, possessed, or relied upon by defendants. Counsel does not testify she had personal knowledge of the subject matter, nor does she make any attempt to prove what the document purports to be. Evidence that lacks foundation is inadmissible,

and a court abuses its discretion when it admits it. (*Wiley v. Easter* (1962) 203 Cal.App.2d 845, 856 [evidence not admissible where no competent foundation laid; abuse of discretion to admit it].) We thus do not consider the evidence.

Defendants contend Roy and Lila's apparent decision not to rescind the arbitration agreements when they had 30 days to do so indicates Roy had the authority to sign them for Lila. In effect, defendants claim Lila ratified the arbitration agreements by not rescinding them. Not so. "The fundamental test of ratification by conduct is whether the releasor, *with full knowledge of the material facts entitling him to rescind*, has engaged in some unequivocal conduct giving rise to a reasonable inference that he intended the conduct to amount to a ratification." (*Union Pacific Railroad Co. v. Zimmer* (1948) 87 Cal.App.2d 524, 532, italics added.) There is no evidence Lila knew the arbitration agreements existed, that Roy signed them, or that she had a right to rescind them. The fact Lila or Roy did not rescind the agreements, without more, does not indicate Roy signed them as Lila's agent.

The evidence establishes that Lila made no actions to establish Roy as her ostensible agent or to lead Winter to reasonably believe Roy was her agent. Roy signed the agreements based on Darleen's request to defendants, not on Lila's request or authorization. Defendants could not rely on Lila's silence in this instance as they had no prior relationship or experience with her from which they could infer her silence communicated her authorization. Substantial evidence supports the trial court's determination that Roy did not act as Lila's agent.

As Roy did not bind Lila to arbitration as her agent, he also did not bind the children's claims for wrongful death to arbitration. Because the children's claims were to be litigated, and because the children were third parties whose claims against defendants arose from the same set of facts as Lila's and Roy's, the trial court had discretion under section 1281.2 to deny defendant's petition to compel arbitration in order to prevent

14

conflicting rulings on common issues of law or fact.  The court did not abuse its discretion in denying the petition.[4]

DISPOSITION

The order denying the petition to compel arbitration is affirmed.  Costs on appeal are awarded to plaintiffs.  (Cal. Rules of Court, rule 8.278(a).)


           HULL           , J.


We concur:


       RAYE          , P. J.


       HOCH          , J.

---

[4]     In his opening brief and at oral argument, Roy contended the trial court erred by determining his claims were subject to arbitration.  Roy, however, did not file a cross-appeal.  "As a general matter, ' "a respondent who has not appealed from the judgment may not urge error on appeal." ' (*Estate of Powell* (2000) 83 Cal.App.4th 1434, 1439.) 'To obtain affirmative relief by way of appeal, respondents must themselves file a notice of appeal and become cross-appellants.' (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2015) ¶ 8:195, p. 8-155.)." (*Preserve Poway v. City of Poway* (2016) 245 Cal.App.4th 560, 585.)  Because Roy did not file a cross-appeal, his argument is forfeited.  The trial court's ruling that Roy's claims were subject to arbitration is the state of the record in this matter and we decide the remaining issues in accordance with that ruling.

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ROY VALENTINE, Individually and as Adminsitrator, etc., et al.,<br><br>    Plaintiffs and Respondents,<br><br>    v.<br><br>PLUM HEALTHCARE GROUP, LLC, et al.,<br><br>    Defendants and Appellants. | C080940<br><br>(Super. Ct. No. 34201500181252CUPOGDS)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

APPEAL from a judgment of the Superior Court of Sacramento County, Steven H. Rodda, J.  Affirmed.

Williams Iagmin, Jon Robert Williams for Defendants and Appellants.

The Law Office, Edward P. Dudensing and Kerri A. Rollins for Plaintiffs and Respondents.

THE COURT:

The opinion in the above-entitled matter filed on July 2, 2019, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:


_____

RAYE, P. J.


_____

HULL, J.


_____

HOCH, J.

2