Filed 2/8/22; certified for publication 3/4/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| KATHRYN L. ROGERS, et al., | |
| Plaintiffs and Respondents, | C089561 |
| v. | (Super. Ct. No. 34-2018-00244899-CU-PO-GDS) |
| ROSEVILLE SH, LLC, et al., | |
| Defendants and Appellants. | |

Claude Rogers, a former resident of a residential care facility for the elderly known as Meadow Oaks of Roseville, died after experiencing heatstroke. His wife and successor-in-interest Kathryn and sons Jeffrey, Phillip and Richard sued Meadow Oaks of Roseville, Roseville SH, LLC, CPR/AR Roseville SH Owner, LLC, DCP Investors Roseville SH, LLC, DCP Management Roseville SH, LLC, Westmont Living, Inc.,

1

Tanysha Borromeo, Ana Rojas, and Andrew Badoud for elder abuse, fraud, and wrongful death. Because members of the Rogers family share the same last name, we refer to them by their first names for clarity.

Roseville SH, LLC d/b/a Meadow Oaks of Roseville, DCP Investors Roseville SH, LLC, DCP Management Roseville SH, LLC, Westmont Living, Inc., Tanysha Borromeo and Ana Rojas (hereafter defendants) appeal from an order denying their petition to compel plaintiffs to arbitrate their claims pursuant to an arbitration agreement that was part of the Residency Agreement Richard signed as Claude's representative. Although defendants filed a notice of appeal, the appellate briefs were filed on behalf of Roseville SH, LLC only. Roseville SH, LLC contends that in denying the petition to compel arbitration (1) the trial court erroneously believed defendants had to show that Claude lacked mental capacity to consent before they could prove that Richard had the authority to sign the arbitration agreement for Claude; (2) the trial court erred in concluding that Richard did not act as Claude's actual or ostensible agent when he signed the arbitration agreement on Claude's behalf; and (3) the trial court's order violated the Federal Arbitration Act (9 U.S.C. § 1 et seq.).

We conclude (1) Roseville SH, LLC misconstrues the trial court's analysis, (2) the trial court did not err in denying the petition to compel arbitration, and (3) the trial court's order did not violate the Federal Arbitration Act. We will affirm the trial court's order.

BACKGROUND

The complaint alleged the following: Claude was born on January 15, 1935. He was admitted to Meadow Oaks of Roseville (Meadow Oaks), a residential care facility for the elderly, on December 30, 2017. Claude suffered multiple falls while at Meadow Oaks because he did not receive adequate interventions to prevent falls and was not adequately supervised. Meadow Oaks staff were also neglectful in other areas of Claude's care, including hygiene and monitoring his physical, mental and psychosocial wellbeing. On multiple occasions, family members found Claude unattended outside, in

2

his wheelchair. Claude could not push himself in his wheelchair and could not open the facility door to exit or enter the facility by himself. Family members repeatedly instructed Meadow Oaks staff not to leave Claude outside unattended. But on June 30, 2018, Claude was left outside for hours. He suffered severe heatstroke and died on July 14, 2018. Defendants owned, managed, controlled, maintained and/or operated Meadow Oaks.

Defendants filed a petition to compel plaintiffs to arbitrate all of their causes of action. Defendants submitted the declaration of defense counsel Mark Ginella in support of the petition. Ginella presented a document he averred was a copy of the Residency Agreement Richard signed on March 9, 2018. Plaintiffs forfeited any objection to the document submitted with Ginella's declaration by not objecting to it in the trial court. (*Gonzalez v. Santa Clara County Dept. of Social Services* (2017) 9 Cal.App.5th 162, 173.) Ginella said, at the hearing on defendants' petition, that the 2018 Residency Agreement was the operative agreement. Accordingly, we limit our discussion to that agreement.

The Residency Agreement was between Westmont Living, Inc., a corporation doing business as Meadow Oaks, Claude and Richard. The agreement identified Claude as the resident and Richard as the resident's representative. Richard signed the agreement as "representative." The signature line for resident was left blank. Above the signature block was the following sentence: "Having read and understood this Residency Agreement and each of the attachments/appendixes (the 'Attachments') and the obligations created by such documents, each Representative (1) acknowledges that he or she is legally authorized to be Resident's Representative; and (2) signs this Residency Agreement to undertake to guarantee the obligations of the Resident, including the payment of all fees that the Resident may owe the Community under this Residency Agreement."

3

Appendix N to the Residency Agreement was titled "Arbitration Agreement." Richard signed the appendices to the Residency Agreement as "representative." Tanysha Borromeo countersigned as executive director. The Arbitration Agreement states, "BOTH PARTIES TO THIS RESIDENCY AGREEMENT UNDERSTAND THAT AGREEING TO ARBITRATION IS NOT A CONDITION OF ADMISSION TO THE COMMUNITY. By signing the line at the end of this Section, however, you agree, on behalf of your spouse, heirs, representatives, executors, administrators, successors, assigns, managers, and agents, as applicable, that any and all claims and disputes arising from or related to this Agreement or to your residency, care or services at the Community, whether made against MEADOW OAKS OF ROSEVIlLE or any other individual or entity, including without limitation, personal injury or wrongful death claims, shall be resolved by submission to neutral, binding arbitration in accordance with the Federal Arbitration Act; except that any claim or dispute involving unlawful detainer proceedings (eviction) or any claims that are brought in small claims court shall not be subject to arbitration unless all parties involved agree to arbitrate such proceedings. If someone other than the resident signs this arbitration clause, he/she understands and agrees that he/she is agreeing to arbitrate on behalf of the resident and on behalf of him/herself as an individual. You give up your constitutional right to have any such dispute decided in a court of law or equity before a judge or jury, and instead accept the use of arbitration. You further waive your right to participate in a representative capacity, or to participate as a member of a class, in any litigation or arbitration proceeding with respect to any such dispute." The Arbitration Agreement provided that Claude may withdraw his agreement to arbitrate within 30 days after signing the agreement by providing written notice of the withdrawal to the facility.

Plaintiffs opposed the petition to compel arbitration. They argued that (1) the arbitration agreement was invalid because Richard did not consent to contracting by electronic means; (2) there was no binding arbitration agreement because Claude did not

agree to arbitrate and there was no evidence that Richard had any authority to sign the arbitration agreement on behalf of his father, mother and/or brothers; (3) there was no evidence that Claude was incapacitated such that Richard had the authority to act under the advanced health care directive;[1] (4) the arbitration agreement did not apply to Richard's individual claims because he did not sign the agreement in his personal capacity; (5) the trial court should deny the petition because plaintiffs alleged individual claims for damages and "splitting" the action in two fora would raise an unacceptable risk of inconsistent rulings on issues of fact and law; and (6) the arbitration agreement was unconscionable.

Richard submitted a declaration in support of the opposition. He averred the following: Claude was his father. Richard was present when Claude was admitted to Meadow Oaks. Claude suffered mild cognitive impairments but did not have dementia and could read, write, understand and sign documents at the time of his admission. Claude did not ask Richard to sign anything for him and never told Richard that Richard had the authority to sign any medical documents for Claude or to waive Claude's right to a jury trial. On the day Claude was admitted to Meadow Oaks, the administrator of the facility took Richard into her office and said she had documents she needed Richard to sign for the admission. Richard did not know why the administrator asked him to sign the documents when he lived in San Diego and Claude was able to sign for his admission. The administrator did not ask Richard whether he had a power of attorney or say that Richard had to sign because he had authority under some power of attorney or that Claude had directed the administrator to allow Richard to sign admissions documents. In fact, Claude had not directed Richard to sign the documents. Richard only signed because the administrator said he had to sign the documents in order to admit Claude to

---

[1] There is no evidence of an advanced health care directive in the record.

the facility. Richard signed the admissions documents in December 2017, on the lines where the administrator indicated. He did not represent to the administrator that he had the authority to sign the documents. He would have directed the administrator to have Claude sign the documents if the administrator had said that Claude should sign the documents if he was able. Richard did not see anyone at Meadow Oaks try to discuss the admissions documents with Claude, read or explain them to him, or ask him to sign them. The administrator did not ask Richard whether Claude could do those things. Richard did not write on any document that he had a durable power of attorney. In fact, when the administrator asked Richard, he said he was Claude's son and that was what Richard wrote on the documents he signed. About two and a half months later, Richard received an e-mail from Meadow Oaks asking him to sign a document attached to the e-mail. No one from the facility talked to Richard about the document. Richard thought the facility asked him to sign the document because he signed the 2017 admissions documents. Claude did not tell Richard that he wanted Richard to sign any document or that Richard had the authority to sign medical documents or an arbitration agreement for Claude. Richard did not represent to anyone that he had the authority to sign the 2018 documents for Claude.

Defendants filed a reply. Plaintiffs filed written objections to the reply and Ginella's declaration in support of the reply. Defendants filed a supplemental reply with a declaration from Borromeo after the trial court issued its tentative ruling. The trial court did not consider the late-filed supplemental reply papers. Roseville SH, LLC's appellate opening brief does not challenge the trial court's decision to not consider the late-filed papers, and we do not consider those papers.

The trial court denied defendants' petition. It agreed there was no binding agreement to arbitrate. It concluded, among other things, that defendants failed to demonstrate that Richard had the authority to sign the arbitration agreement on Claude's

6

behalf. The trial court further found that there was no arbitration agreement binding Richard's mother, brothers and Richard, individually.

## STANDARD OF REVIEW

Code of Civil Procedure sections 1281.2 and 1290.2 create a summary procedure for resolving petitions to compel arbitration upon submitted evidence. (*Engalla v. Permanente Medical Group, In*c. (1997) 15 Cal.4th 951, 972.) When a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the trial court must determine whether an agreement to arbitrate exists and, if any defense to its enforcement is raised, whether the agreement is enforceable. (*Rosenthal v. Great Western Financial Securities Corporation* (1996) 14 Cal.4th 394, 413.) The petitioner bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence. (*Ibid.*; *Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 586 (*Flores*).) The trial court sits as a trier of facts, weighing all of the evidence submitted to reach a final determination. (*Engalla,* at p. 972.)

Although agency is generally a factual question, where the facts are undisputed (as Roseville SH, LLC concedes is true here), we independently review the case to determine whether agency and a valid arbitration agreement exists. (*Valentine v. Plum Healthcare Group, LLC* (2019) 37 Cal.App.5th 1076, 1086 (*Valentine*); *Flores, supra*, 148 Cal.App.4th at p. 586; *van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 562.)

## DISCUSSION

### I

Roseville SH, LLC contends the trial court erroneously believed defendants had to show that Claude lacked mental capacity to consent before they could prove Richard had the authority to sign the arbitration agreement for Claude.

7

The trial court's order does not reflect the analysis Roseville SH, LLC attributes to the trial court. Citing *Goldman v. Sunbridge Healthcare, LLC* (2013) 220 Cal.App.4th 1160 (*Goldman*), the trial court said defendants had to show either that the person to be bound by the arbitration agreement lacked the mental capacity to consent or that the person who signed the agreement had the authority to act as an agent. The trial court's order did not indicate that proof of Claude's lack of mental capacity to consent was a prerequisite to showing that Richard had the authority to sign the arbitration agreement for Claude. To the extent Roseville SH, LLC asserts further related contentions, we do not consider them because they are based on its incorrect reading of the trial court's order.

II

Roseville SH, LLC also argues the trial court erred in concluding that Richard did not act as Claude's actual or ostensible agent when he signed the arbitration agreement on Claude's behalf.

Roseville SH, LLC makes a number of assertions in its appellate opening brief without any citation to the record. It states that neither Claude nor Richard disclosed to Meadow Oaks, at the time of the execution of the admissions documents, that Richard did not have the authority to sign the admissions documents on Claude's behalf and Claude never told Meadow Oaks that he did not authorize Richard to sign the admissions documents for him. Claude allowed Richard and Meadow Oaks staff to believe that Richard possessed the authority to sign the admissions documents on Claude's behalf. Claude likely knew that Richard signed the admissions papers on his behalf and neither Claude nor Richard ever attempted to rescind the agreement to arbitrate. Factual assertions made without citation to the portion of the record supporting them are forfeited. (*Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 743 (*Miller*); *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 (*Duarte*).)

8

The right to compel arbitration depends on the existence of an agreement to arbitrate. (*Young v. Horizon West, Inc.* (2013) 220 Cal.App.4th 1122, 1128 (*Young*).) Whether a valid agreement to arbitrate exists is determined under applicable contract law. (*Garrison v. Superior Court* (2005) 132 Cal.App.4th 253, 263 (*Garrison*).) "Generally, a person who is not a party to an arbitration agreement is not bound by it. [Citation.] However, there are exceptions. For example, . . . a person who is authorized to act as the [resident or] patient's agent can bind the [resident or] patient to an arbitration agreement. [Citations.]" (*Flores, supra*, 148 Cal.App.4th at p. 587, italics omitted; see also *Monschke v. Timber Ridge Assisted Living, LLC* (2016) 244 Cal.App.4th 583, 586-587 (*Monschke*).)

" 'An agent is one who represents another, called the principal, in dealings with third persons.' [Citation.] In California, an agency is 'either actual or ostensible.' " (*Valentine, supra*, 37 Cal.App.5th at p. 1086.) Actual agency arises when the principal's conduct causes the agent reasonably to believe that the principal consents to the agent's act on behalf of the principal. (*Tomerlin v. Canadian Indemnity Co.* (1964) 61 Cal.2d 638, 643 (*Tomerlin*); see, e.g., *Hogan v. Country Villa Health Services* (2007) 148 Cal.App.4th 259, 262 [health care power of attorney authorized daughter to sign arbitration agreements for mother, as part admissions packet for a long-term health care facility]; *Garrison, supra*, 132 Cal.App.4th at pp. 258, 265-267 [mother's claims must be arbitrated where daughter was authorized under a health care power of attorney to enter into arbitration agreements on behalf of mother].) Ostensible agency arises when the principal's conduct causes the third party reasonably to believe that the agent has the authority to act on the principal's behalf. (*Tomerlin, supra*, 61 Cal.2d at p. 643.)

"[A]n agency[, whether actual or ostensible,] cannot be created by the conduct of the agent alone; rather, conduct by the principal is essential to create the agency." (*Flores, supra*, 148 Cal.App.4th at pp. 587-588, italics omitted; see *Hartong v. Partake, Inc.* (1968) 266 Cal.App.2d 942, 960 [stating that liability for the acts of an ostensible

9

agent rests on the doctrine of estoppel, which requires representations by the principal].) " ' " 'The principal must in some manner indicate that the agent is to act for [the principal], and the agent must act or agree to act on [the principal's] behalf and subject to [the principal's] control.' . . . " [Citations.] Thus, the "formation of an agency relationship is a bilateral matter. Words or conduct by both principal and agent are necessary to create the relationship . . . ." ' " (*Flores,* at p. 588, italics omitted; see *Howell v. Courtesy Chevrolet, Inc*. (1971) 16 Cal.App.3d 391, 401 (*Howell*) [stating that ostensible agency requires the principal to intentionally communicate the agency relationship to the third party or to negligently cause the third party to believe that there is an agency relationship].) The burden of proving that a purported agent had the authority to act for the purported principal in a particular circumstance lies with the persons dealing with the agent. (*Flores,* at p. 588; *Howell,* at p. 401.)

The party seeking to compel arbitration does not meet its burden of proving the existence of an arbitration agreement when it does not present any evidence that the purported principal's conduct caused the agent or the third party to believe that the agent had the authority to bind the principal. (*Lopez v. Bartlett Care Center, LLC* (2019) 39 Cal.App.5th 311, 313, 319; *Valentine, supra*, 37 Cal.App.5th at pp. 1086-1088; *Hutcheson v. Eskaton FountainWood Lodge* (2017) 17 Cal.App.5th 937, 958; *Young, supra*, 220 Cal.App.4th at pp. 1132-1134; *Goldman, supra*, 220 Cal.App.4th at p. 1173; *Flores, supra*, 148 Cal.App.4th at p. 585, 588; *Pagarigan v. Libby Care Center, Inc*. (2002) 99 Cal.App.4th 298, 301-303.)

Here, Richard signed the arbitration agreement as Claude's representative. The Residency Agreement and arbitration agreement do not define "representative." We cannot conclude from the face of either document that Richard acted under an express agency. The signature blocks for the Residency Agreement and arbitration agreement did not identify Richard as Claude's agent, and the agreements do not state that Richard acted under a power of attorney. (*Goliger v. AMS Properties, Inc*. (2004) 123 Cal.App.4th 374,

10

376-377 (*Goliger*) [holding that mother's claims need not be arbitrated where daughter signed the admissions packet, including arbitration agreements, as "responsible party" and not as agent for mother and there was no evidence that mother allowed daughter to sign the arbitration agreements on her behalf]; see *Flores, supra*, 148 Cal.App.4th at pp. 590-594 [distinguishing between "legal representative," "responsible party" and "next of kin" and concluding that while a next of kin could sign a contract to admit a mentally incompetent patient to a nursing home even if he or she was not an agent, he or she could not sign an arbitration agreement on the patient's behalf].) Rather, Richard averred that Claude did not direct him to sign the 2018 admissions documents, including the arbitration agreement, and Claude never told Richard that Richard had the authority to sign any medical document or arbitration agreement for Claude. Defendants produced no evidence that Richard was expressly authorized to act as Claude's agent.

Roseville SH, LLC bases its claim of agency on Richard's apparent belief that he had the authority to sign the admissions papers on his father's behalf and on Claude's asserted failure to disavow Richard of that belief. But Richard's conduct alone cannot create an agency (*Flores, supra*, 148 Cal.App.4th at pp. 587-588) and there is no evidence that any conduct on Claude's part justified a belief by defendants that Richard had the authority to sign the arbitration agreement on Claude's behalf.

Roseville SH, LLC challenges the plaintiffs' denial of an agency relationship between Claude and Richard, urging that Claude had sufficient opportunity to object to Richard's signing the admissions papers but did not object. We need not consider Roseville SH, LLC's factual claims because they are not supported by citation to the record. (*Miller, supra*, 101 Cal.App.4th at p. 743; *Duarte, supra*, 72 Cal.App.4th at p. 856.) In any event, the appellate court in *Valentine* rejected a similar argument by the owners and operators of a skilled nursing facility attempting to enforce the arbitration agreement a husband signed for his wife upon her admission to the facility. (*Valentine,*

11

*supra*, 37 Cal.App.5th at p. 1088-1090; see also *Warfield v. Summerville Senior Living, Inc.* (2007) 158 Cal.App.4th 443, 448- 449.)

Here there is no evidence a Meadow Oaks representative spoke with Claude about the arbitration agreement Richard signed. Richard averred that he received the 2018 admissions documents by e-mail and did not talk with anyone from the facility about the documents. There was no evidence that Claude approved similar acts by Richard in the past or that Claude remained silent even though he knew that Richard had signed the arbitration agreement on his behalf. (See *Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 426 [stating that ostensible authority may be established by proof that the principal approved prior similar acts of the agent or that the principal knew that the agent held himself/herself out as clothed with certain authority and the principal remained silent].)

Roseville SH, LLC also argues that the arbitration agreement gave Claude a right to rescind the agreement within 30 days of signing but Claude did not rescind the agreement, further evidencing an agency relationship between Claude and Richard. Even assuming there is support in the record for the claim that Claude did not rescind the arbitration agreement, *Valentine* rejected a similar claim.

The defendants in *Valentine* argued that the wife ratified the arbitration agreements signed by the husband because she did not rescind the agreements within the 30-day rescission period provided in the agreements. (*Valentine, supra*, 37 Cal.App.5th at p. 1090.) The appellate court said, " 'The fundamental test of ratification by conduct is whether the releasor, with full knowledge of the material facts entitling him to rescind, has engaged in some unequivocal conduct giving rise to a reasonable inference that he intended the conduct to amount to a ratification.' " (*Ibid.*, italics omitted.) But there was no evidence that the wife knew the arbitration agreements existed, that the husband signed them or that the wife had a right to rescind them. (*Ibid.*) As in *Valentine*, there was no evidence in this case that Claude knew Richard had signed the arbitration

12

agreement on his behalf and that he had 30 days from the date of signing to rescind the agreement. Claude's failure to rescind means nothing without evidence that he knew about the arbitration agreement. (*Valentine, supra*, 37 Cal.App.5th at p. 1090.)

" 'A third person . . . is not compelled to deal with an agent, but if he [or she] does so, he [or she] must take the risk. He [or she] takes the risk not only of ascertaining whether the person with whom he [of she] is dealing is the agent, but also of ascertaining the scope of [that person's] powers.' " (*Young, supra*, 220 Cal.App.4th at p. 1134; see also *Howell, supra*, 16 Cal.App.3d at p. 401.) In the absence of evidence that Richard had actual or ostensible authority to bind Claude to the arbitration agreement, the trial court did not err in denying defendants' petition to compel arbitration. Because Claude was not bound by the arbitration agreement, the arbitration agreement does not bind his "spouse, heirs, representatives, executors, administrators, successors, assigns, managers, and agents." The individual claims of Claude's wife and sons are also not subject to the arbitration agreement because Richard did not sign the arbitration agreement in his personal capacity and there was no evidence that he had the authority to sign the arbitration agreement on behalf of his mother and/or brothers. (*Monschke, supra*, 244 Cal.App.4th at pp. 585, 587; *Goldman, supra*, 220 Cal.App.4th at pp. 1176-1178; *Goliger, supra*, 123 Cal.App.4th at pp. 377-378.) Richard averred he had no authority to sign the arbitration agreement on behalf of his mother and/or brothers.

In light of our conclusion, we need not address plaintiffs' additional contention about why the arbitration agreement was not enforceable.

III

Roseville SH, LLC also contends that the trial court's ruling that Richard did not have the authority to sign the arbitration agreement but had the authority to sign the other 2018 admissions documents singled out the arbitration agreement for special treatment, in violation of the Federal Arbitration Act (9 U.S.C. § 1 et seq.).

13

The issue before the trial court on defendants' petition to compel arbitration was whether a valid agreement to arbitrate existed and whether the plaintiffs' causes of action must be arbitrated. The trial court was not asked to and did not decide whether the other admissions documents Richard signed were valid or enforceable. Considering whether Richard had the authority to act as Claude's agent in signing the arbitration agreement was determined by reference to generally applicable principles of contract and agency law. (See *Garrison, supra*, 132 Cal.App.4th at p. 263.) The trial court did not single out the arbitration agreement for special treatment based on the characteristics of arbitration.

## DISPOSITION

The order denying defendants' petition to compel arbitration is affirmed. Respondents shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


                                    /S/
                              MAURO, J.



We concur:


      /S/
ROBIE, Acting P. J.


      /S/
KRAUSE, J.


14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| KATHRYN L. ROGERS et al., | |
| Plaintiffs and Respondents, | C089561 |
| v. | (Super. Ct. No. 34-2018-00244899-CU-PO-GDS) |
| ROSEVILLE SH, LLC, et al., | |
| Defendants and Appellants. | ORDER GRANTING REQUEST TO PUBLISH |

APPEAL from a judgment of the Superior Court of Sacramento County, David I. Brown, Judge. Affirmed.

Wilson Getty, William C. Wilson, Mark A. Ginella, Williams Iagmin and Jon R. Williams for Defendants and Appellants.

Law Firm of Sean R. Laird and Sean R. Laird for Plaintiffs and Respondents.

THE COURT:

The opinion in the above-entitled matter filed on February 8, 2022, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.


FOR THE COURT:


_____/S/_____
ROBIE, Acting P. J.


_____/S/_____
MAURO, J.


_____/S/_____
KRAUSE, J.