Filed 3/11/25  Lapkass v. Wells Fargo Clearing Services CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| ULRIKE LAPKASS, Individually and as Trustee, etc., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> WELLS FARGO CLEARING SERVICES, LLC, et al., <br><br> Defendants and Appellants. | C099944 <br><br> (Super. Ct. No. S-CV-0049102) |

Prior to his death in 2021, Paul Lapkass worked as a financial advisor for Wells Fargo Clearing Services, LLC (Wells Fargo).  Paul's wife Ulrike[1] subsequently sued Wells Fargo and Andrew Schoenike based on an agreement with Wells Fargo and

---

[1]  Because they share the same last name, we will refer to Paul and Ulrike by their first names for clarity.

1

Schoenike that Paul had signed. Wells Fargo and Schoenike moved to compel arbitration, noting that Paul had executed other agreements containing arbitration clauses. The trial court denied the motion to compel arbitration.

Wells Fargo and Schoenike appeal from the trial court's order, contending arbitration is required by (A) the doctrine of equitable estoppel, (B) a Financial Industry Regulatory Authority (FINRA) arbitration rule, (C) Ulrike's status as a third-party beneficiary of the agreements signed by Paul, and (D) Paul's authority to bind Ulrike to the arbitration clauses. Finding no merit in the contentions, we will affirm the trial court's order.

BACKGROUND

Paul worked as a financial advisor for Wells Fargo until his death in 2021. In that role he serviced accounts under a Wells Fargo advisors team agreement made between Paul, Schoenike, and Wells Fargo. Paul designated his wife Ulrike as his beneficiary under a team member protection provision of the agreement, which provided that in the event of Paul's death, Ulrike would receive a lump sum payment based on a valuation of Paul's revenue. The team agreement addressed dispute resolution but did not require arbitration.

Ulrike, individually and as trustee of the Lapkass Family Trust, subsequently sued Wells Fargo and Schoenike for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, and restitution based on unjust enrichment in relation to the accounts serviced under the team agreement. Among other things, the complaint alleged Wells Fargo and Schoenike failed to pay Ulrike money owed under the agreement, and converted Paul's book of business to their own use without compensating Ulrike.

Wells Fargo and Schoenike moved to compel arbitration, arguing Ulrike is a third-party beneficiary of the team agreement and Paul also signed other agreements involving Wells Fargo or its predecessor, Wachovia Securities, LLC, containing arbitration clauses,

2

specifically an employment offer letter, two promissory notes, and securities industry registration forms (Form U-4s).

The offer letter referenced in the motion to compel contained an arbitration provision stating in pertinent part: "You agree that any action instituted as a result of any controversy arising out of this Offer Summary and/or the interpretation thereof, or your employment or termination of your employment, shall be brought before the arbitration facility of the National Association of Securities Dealers [(NASD)] to the exclusion of all others, unless the rules and/or codes of the NASD provide otherwise." A 2008 promissory note contained a clause stating in pertinent part: "you agree that any action instituted as a result of any controversy arising out of this Note, or as a result of any section interpretation thereof, shall be brought before the arbitration facility of the [NASD] to the exclusion of all others." A 2016 promissory note contained a provision stating that Paul agreed any action instituted as a result of a controversy arising from the validity, enforcement or construction of the note, or any dispute concerning Paul's employment or termination of employment, would be resolved by arbitration under FINRA rules. The motion to compel arbitration explained that the NASD is now known as FINRA. The promissory notes indicated they would bind Paul's heirs, beneficiaries, and estate. In addition, the Form U-4s referenced in the motion contained clauses stating that Paul agreed to arbitrate disputes or claims required to be arbitrated under the rules, constitutions, or by-laws of self-regulatory organizations including FINRA. As part of the motion, Wells Fargo and Schoenike submitted the text of two FINRA rules.

The trial court denied the motion to compel arbitration, ruling there was no showing Ulrike was a third-party beneficiary subject to arbitration, and Ulrike's claims were based on the team agreement, which did not contain arbitration provisions or incorporate them by reference from other documents.

3

## STANDARD OF REVIEW

When a petition to compel arbitration is filed, the trial court determines whether an agreement to arbitrate exists. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413.) The petitioner bears the burden of proof by a preponderance of the evidence. (*Engalla v. Permanente Medical Group, Inc*. (1997) 15 Cal.4th 951, 972.) On appeal, we review issues of law de novo and the trial court's factual findings under the substantial evidence standard. (*Kinder v. Capistrano Beach Care Center, LLC* (2023) 91 Cal.App.5th 804, 811.)

In addition, we independently review whether a nonsignatory to a contract is bound by an arbitration provision in that contract. (*Daniels v. Sunrise Senior Living, Inc.* (2013) 212 Cal.App.4th 674, 680; *Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1512.) We make that determination under state law principles.[2] (*Arthur Andersen LLP v. Carlisle* (2009) 556 U.S. 624, 631; *Philadelphia Indemnity Ins. Co. v. SMG Holdings, Inc.* (2019) 44 Cal.App.5th 834, 840; *DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1353, fn. 3 (*DMS Services*); *Mundi v. Union Sec. Life Ins. Co.* (9th Cir. 2009) 555 F.3d 1042, 1044-1045.)

## DISCUSSION

Wells Fargo and Schoenike contend arbitration is required by (A) the doctrine of equitable estoppel, (B) a FINRA arbitration rule, (C) Ulrike's status as a third-party beneficiary of the agreements signed by Paul, and (D) Paul's authority to bind Ulrike to the arbitration clauses. We address each argument in turn.

---

[2] The team agreement states it is governed by Missouri law. However, the parties rely on California law, and not Missouri law. We do the same.

4

## A

To begin with, Wells Fargo and Schoenike contend Ulrike is equitably estopped from refusing to arbitrate because her claims are intertwined with Paul's employment and the arbitration provisions to which he agreed.

In general, a party cannot be compelled to arbitrate a dispute unless the party agreed in writing to the arbitration. (*Jensen v. U-Haul Co. of California* (2017) 18 Cal.App.5th 295, 300 (*Jensen*); accord, *United Steelworkers of America v. Warrior & Gulf Navigation Co.* (1960) 363 U.S. 574, 582; see *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.* (2010) 559 U.S. 662, 682.) But a nonsignatory plaintiff may be estopped from refusing to arbitrate when the plaintiff's claims are dependent upon, or inextricably intertwined with, obligations of an agreement containing an arbitration clause, or when the plaintiff receives a direct benefit from the agreement. (*Jensen, supra*, 18 Cal.App.5th at p. 306; *Pillar Project AG v. Payward Ventures, Inc.* (2021) 64 Cal.App.5th 671, 677-678; accord, *JSM Tuscany, LLC v. Superior Court* (2011) 193 Cal.App.4th 1222, 1239-1240 (*JSM Tuscany, LLC*); see generally *DMS Services, supra*, 205 Cal.App.4th at p. 1353, fn. 3; see also *UFCW & Employers Benefit Trust v. Sutter Health* (2015) 241 Cal.App.4th 909, 929 (*UFCW*).)

Ulrike's causes of action for breach of contract, breach of implied covenant of good faith and fair dealing, and unjust enrichment are based on the alleged breach of the team agreement. Her conversion cause of action is based on alleged interference with Ulrike's property rights in Paul's book of business. In opposing defendants' motion, Ulrike affirmed she seeks benefits under the team agreement only, does not seek damages for the violation of any agreement other than the team agreement, and is not asserting a derivative claim for the breach of Paul's employment contract. In particular, she said she was not seeking to enforce the terms of the offer letter, promissory notes, or Form U-4s. We conclude the claims in the complaint depend on the team agreement and are not based on the offer letter, promissory notes, or Form U-4s. Wells Fargo and

Schoenike have not established that Ulrike receives a direct, rather than indirect, benefit from agreements containing arbitration clauses or that her causes of action would not be viable without reliance on the offer letter, promissory notes, Form U-4s, or FINRA rules. Because the team agreement did not require arbitration, the trial court did not err in denying the motion to compel.

In their appellate reply brief, Wells Fargo and Schoenike argue the cause of action for breach of the implied covenant of good faith and fair dealing relies on the promissory notes because the bonus referenced in that cause of action was issued through promissory notes. But the pages of the record they cite do not support their argument. Rather, the complaint alleged Wells Fargo and Schoenike breached the covenant of good faith and fair dealing implied in the team agreement by imposing illegal and unreasonable conditions on payment to Ulrike under the team agreement.

Although the complaint mentions the promissory notes signed by Paul, such a reference is not enough to require arbitration. (*UFCW, supra*, 241 Cal.App.4th at pp. 930-931.) Wells Fargo and Schoenike nevertheless argue it is necessary to refer to the promissory notes to calculate what is due to Ulrike under the team agreement. The promissory notes may be relevant to a claim of setoff by Wells Fargo, but it is not the basis for Ulrike's causes of action. Moreover, even if the controversy would not have occurred but for the existence of the other documents, that is not enough to compel arbitration. (See *Pacific Fertility Cases* (2022) 85 Cal.App.5th 887, 896 [the equitable estoppel analysis is not a simple "but for" test; it assesses whether the claims rely on the agreement containing an arbitration provision].) Further, equitable estoppel does not apply solely because the remedy the plaintiff seeks requires reference to a contract containing an arbitration clause. (See *Davis v. Nissan North America, Inc.* (2024) 100 Cal.App.5th 825, 844, review granted May 29, 2024, S284697; see *Jensen, supra*, 18 Cal.App.5th at p. 306.)

6

In support of their position, Schoenike and Wells Fargo rely on *JSM Tuscany, LLC, supra*, 193 Cal.App.4th 1222 and *Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262, but those cases are distinguishable. It is true that the appellate court in *JSM Tuscany, LLC*, concluded that nonsignatory plaintiffs can be equitably estopped from repudiating the arbitration clause in a contract where their claims depend upon, or are inextricably intertwined with, that contract. (*JSM Tuscany, LLC*, at pp. 1239-1241.) But as we have explained, Ulrike's claims are not dependent on, or inextricably intertwined with, the offer letter, promissory notes, or Form U-4s. As for *Boucher*, the appellate court held that a nonsignatory defendant can compel a plaintiff to arbitrate where the plaintiff had a contract containing an arbitration clause with a codefendant related to the nonsignatory defendant, and the plaintiff's claims are based on the contract with the codefendant. (*Boucher*, at pp. 272-273.) Here, there is no evidence Ulrike agreed to arbitrate her claims against Wells Fargo, Schoenike, or a related party; and the agreement upon which her claims are based does not contain an arbitration clause.

B

Wells Fargo and Schoenike next contend that a FINRA arbitration rule requires arbitration of Ulrike's claims. The rule they cite is FINRA Code of Arbitration Procedure for Industry Disputes Rule 13200 (Rule 13200), which states: "Except as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among: [¶] Members; [¶] Members and Associated Persons; or [¶] Associated Persons."

Although Wells Fargo and Schoenike assert that Paul was an "associated person" within the meaning of the FINRA rule, there is no contention or evidence that Ulrike was a member or associated person within the meaning of the rule, or that the family trust was a member. Because Ulrike's lawsuit is not between members and/or associated persons, the invocation of Rule 13200 lacks merit.

7

## C

Furthermore, Wells Fargo and Schoenike claim arbitration is required by Ulrike's status as a third-party beneficiary, and that the trial court found Ulrike to be a third-party beneficiary of the agreements containing arbitration clauses. But the portion of the order cited by Wells Fargo and Schoenike in support of their contention is a trial court summary of their argument, not a finding by the trial court. In any event, although a nonsignatory can be compelled to arbitrate when the nonsignatory sues as a third-party beneficiary of a contract containing an arbitration provision (*JSM Tuscany, LLC, supra*, 193 Cal.App.4th at p. 1240), as we have explained, here Ulrike is not suing based on an agreement containing an arbitration clause.

## D

Additionally, Schoenike and Wells Fargo assert that Paul had authority to bind Ulrike to the arbitration clauses in the offer letter, promissory notes, and Form U-4s.

Courts have recognized circumstances in which a preexisting relationship exists between a nonsignatory and signatory to an arbitration agreement making it equitable to bind the nonsignatory to the agreement. (*Jensen, supra*, 18 Cal.App.5th at p. 301.) But the preexisting relationship is generally grounded in the authority of a signatory to bind the nonsignatory (*County of Contra Costa v. Kaiser Foundation Health Plan, Inc.* (1996) 47 Cal.App.4th 237, 242-243), and a marital relationship, by itself, does not establish such authority (*Valentine v. Plum Healthcare Group, LLC* (2019) 37 Cal.App.5th 1076, 1089 (*Valentine*); *Goldman v. Sunbridge Healthcare, LLC* (2013) 220 Cal.App.4th 1160, 1172).

Here there is no evidence Ulrike designated Paul as her agent with authority to enter into arbitration agreements on her behalf, or that some conduct by Ulrike reasonably caused Wells Fargo and Schoenike to believe that Paul was authorized to enter into arbitration agreements for Ulrike. (*Valentine, supra*, 37 Cal.App.5th at pp. 1086-1090.) Paul did not bind Ulrike to the arbitration clauses.

8

The trial court's order denying the motion to compel arbitration and for a stay is affirmed.  Ulrike shall recover her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


                                            /S/
                                      MAURO, J.


We concur:


     /S/
ROBIE, Acting P. J.


     /S/
WISEMAN, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.