Filed 10/9/23  Estate of McCalebb CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ESTATE OF VONCILE R. MCCALEBB et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> AG LYNWOOD, LLC, <br><br> Defendant and Appellant. | B321122 <br><br> (Los Angeles County Super. Ct. No. 20STCV31703) |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel M. Crowley, Judge.  Affirmed.

Lewis Brisbois Bisgaard & Smith, Lann G. McIntyre, Ernest Slome, Tracy D. Forbath, Kathleen M. Walker, Lynnette A. Christopoulos and Suzanne L. Schmidt for Defendant and Appellant.

Greene Broillet & Wheeler, Scott H. Carr, Ivan Puchalt, Aaron L. Osten; Esner, Chang & Boyer, Stuart B. Esner, and Kevin K. Nguyen for Plaintiffs and Respondents.

———————————————

# INTRODUCTION

Voncile McCalebb (McCalebb) was a resident at AG Lynwood Care Center (Lynwood), a 24-hour skilled nursing facility that provides long-term care. After McCalebb passed away in April 2020 her estate and two adult children, Lisa Rabb (Lisa) and Lashawn Rabb (Lashawn), filed a lawsuit alleging Lynwood provided substandard care with respect to her "nourishment and general treatment" and failed "to take adequate measures to protect decedent from contracting Covid-19."

After unsuccessfully attempting to remove the case to federal court, Lynwood petitioned to compel arbitration in the superior court asserting the parties were bound by the arbitration agreement purportedly signed by Lisa on behalf of her mother. The court denied the petition, concluding Lynwood failed to prove Lisa had actual or ostensible authority to execute the arbitration agreement, or that Lisa or Lashawn signed the arbitration agreement in their personal capacity. We affirm.

# FACTUAL AND PROCEDURAL HISTORY

A.  *McCalebb Is Admitted to Lynwood*

On February 2, 2018 McCalebb was admitted to Lynwood's skilled nursing facility. Although McCalebb "had basic awareness of the world around her and made her own legal decisions," she "required extensive assistance with her activities of daily living."

As part of the admission process, Lisa purportedly signed two form arbitration agreements presented by Lynwood. One

covered medical malpractice and the second covered disputes other than medical malpractice, including the Elder Abuse and Dependent Adult Civil Protection Act. Each arbitration agreement had signature lines for the resident, the resident's representative, and Lynwood's representative. McCalebb's name was printed on both documents on the resident line, but she did not sign either of the agreements. Lisa's name was handwritten on the documents on the "Resident Representative" line, and she purportedly signed the agreements on her mother's behalf. Directly above the signature block, each of the pre-printed forms included the following language: "By virtue of Resident's consent, instruction and/or durable power of attorney, I hereby certify that I am authorized to act as Resident's agent in executing and delivering of this arbitration agreement."[1]

Nine days later, Lisa signed a document entitled "Physician Orders for Life-Sustaining Treatment (POLST)" indicating she was her mother's "[l]egally [r]ecognized [d]ecisionmaker," and that Lynwood should attempt resuscitation and provide full treatment in the event her mother had no pulse or was not breathing.

Lashawn did not sign any of the documents.

On April 21, 2020 McCalebb was transferred to St. Francis Hospital where she was diagnosed as being in "respiratory distress" with "agonal breathing." McCalebb tested positive for COVID-19 and was found to be "severely dehydrated and malnourished and nonverbal." McCalebb's "condition

---

[1] Although the record contains two arbitration agreements with separate signature lines, in their briefing the parties construe them as a single agreement.

3

deteriorated rapidly," and she died on April 29, 2020. She was 71 years old.

B.     *The Trial Court Denies the Petition To Compel Arbitration*

On August 20, 2020 the Estate of Voncile R. McCalebb, as well as Lisa and Lashawn in their individual capacities, filed a complaint against Lynwood for elder abuse and neglect, negligence and negligence per se, violation of the residents' bill of rights, wrongful death and concealment. The complaint alleged Lynwood failed "to take adequate measures to protect decedent from contracting Covid-19" and that McCalebb "received substandard care with respect to her nourishment and general treatment."

Lynwood removed the action to federal court on October 23, 2020 and sought arbitration of plaintiffs' claims. The matter was remanded to state court on March 1, 2021.

Once back in state court, Lynwood filed the operative petition to compel arbitration. Lynwood argued that Lisa acted as her mother's actual or ostensible agent when she signed the arbitration agreement and that "Plaintiffs are contractually bound to adjudicate this matter in binding arbitration and not in state court." Lynwood supported its petition with an attorney declaration attaching two arbitration agreements (which as noted above the parties treat as one), the POLST, and a declaration from Lynwood's records custodian attesting the documents were from its files. In opposition, plaintiffs submitted a declaration from Lisa attesting she did not recall signing the arbitration agreement.[2] Plaintiffs argued that even if Lisa did sign the

_____

[2]     Lynwood requests judicial notice of the briefing from its federal motion to compel arbitration. Lynwood argues these

4

agreement, Lynwood "utterly fails to carry [its] burden, supplying no evidence that would support a finding of either actual or ostensible agency." Plaintiffs further argued the wrongful death claim was not subject to arbitration because neither Lisa nor Lashawn signed the agreement in their individual capacities.

The trial court denied the petition to compel arbitration. It determined Lynwood presented insufficient evidence to meet its burden of proving Lisa was McCalebb's agent. As the trial court explained, "Even assuming Lisa Rabb's purported signature is valid, her representation [that she was] her mother's representative is insufficient without more," and that "Moving Party offers no evidence that Lisa Rabb's mother employed her as an agent at the time the arbitration agreement was signed, or that her mother caused Defendant to believe Lisa Rabb was authorized to act as her agent." The trial court further concluded that "nothing in the arbitration agreement indicates that Plaintiffs signed in their personal capacity."

Lynwood timely appealed.

---

documents estop Lisa from claiming she does not remember signing the arbitration agreement. We deny the request for judicial notice because these documents were not presented to the trial court. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 ["Reviewing courts generally do not take judicial notice of evidence not presented to the trial court."]; accord, *State ex rel. Edelweiss Fund, LLC v. JPMorgan Chase & Co.* (2023) 90 Cal.App.5th 1119, 1133, fn. 7.) In any event, as did the trial court, for purposes of our analysis we assume Lisa signed the arbitration agreement.

5

# DISCUSSION

A. *Governing Law and Standard of Review*

"Code of Civil Procedure sections 1281.2 and 1290.2 create a summary procedure for resolving petitions to compel arbitration upon submitted evidence." (*Rogers v. Roseville SH, LLC* (2022) 75 Cal.App.5th 1065, 1072 (*Rogers*); accord, *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 (*Engalla*).) Generally, "when a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable. Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence." (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413; accord, *Flores v. Evergreen at San Diego, LLC* (2007) 148 Cal.App.4th 581, 586 (*Flores*).)

""[T]he right to compel arbitration depends upon the existence of a valid agreement to arbitrate between the parties."" [Citation.] "'The question of whether a valid agreement to arbitrate exists is determined by reference to the law applicable to contracts generally.""" (*Kinder v. Capistrano Beach Care Center, LLC* (2023) 91 Cal.App.5th 804, 811 (*Kinder*); accord, *Garrison v. Superior Court* (2005) 132 Cal.App.4th 253, 263.)

"'There is no uniform standard of review for evaluating an order denying a [petition] to compel arbitration.'" (*Lopez v. Bartlett Care Center, LLC* (2019) 39 Cal.App.5th 311, 317 (*Lopez*), internal quotation marks omitted.) "[I]f the court's denial rests

solely on a decision of law, then a de novo standard of review is employed." (*Ibid*., internal quotation marks omitted; accord, *Garcia v. KND Development 52, LLC* (2020) 58 Cal.App.5th 736, 744 (*Garcia*) ["We review de novo the legal conclusions underlying a trial court's denial of a petition to compel arbitration."].) "If the court's order is based on a decision of fact, then we adopt a substantial evidence standard." (*Lopez*, at p. 317.)

In this case, we review the matter de novo because the trial court's ruling was based primarily on a question of law: whether Lynwood presented sufficient evidence to carry its burden of proof that Lisa was her mother's agent when Lisa signed the arbitration agreement. (*Kinder, supra,* 91 Cal.App.5th at p. 811 ["Here, defendants' motion presents primarily a legal issue that we review de novo: whether, . . . a defendant moving to compel arbitration meets its initial burden of proving the plaintiff agreed to arbitrate solely by submitting an agreement signed by a third party who states in the agreement he or she has authority to sign on the plaintiff's behalf"]; *Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1121 ["However, '[w]hen, as here, the court's order denying a motion to compel arbitration is based on the court's finding that petitioner failed to carry its burden of proof, the question for the reviewing court is whether that finding was erroneous as a matter of law.'"]; *Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425 ["if the court's denial rests solely on a decision of law, then a de novo standard of review is employed"].)

7

B.    *The Trial Court Correctly Ruled Lynwood Failed To Demonstrate McCalebb Agreed To Arbitrate*

On appeal, Lynwood argues the following evidence it presented to the trial court demonstrated Lisa was her mother's agent and bound McCalebb to arbitration:  the arbitration agreement, the POLST, and McCalebb's conduct (or non-conduct) relating to the signing of the arbitration agreement and acceptance of Lynwood's care.  We agree with the trial court that Lynwood's showing was insufficient.

1.    *The Law of Agency*

"'Generally, a person,'" like McCalebb, "'who is not a party to an arbitration agreement is not bound by it.  [Citation.]  However, there are exceptions.  For example, . . . a person who is authorized to act as the [resident or] patient's agent can bind the [resident or] patient to an arbitration agreement.  [Citations].'" (*Rogers, supra,* 75 Cal.App.5th at p. 1074; accord, *Young v. Horizon West, Inc.* (2013) 220 Cal.App.4th 1122, 1128 ["'Even the strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement or who have not authorized anyone to act for them in executing such an agreement.'"]; *Bouton v. USAA Casualty Ins. Co.* (2008) 43 Cal.4th 1190, 1199 ["'there is no policy compelling persons to accept arbitration of controversies they have not agreed to arbitrate'"]; *Flores, supra,* 148 Cal.App.4th at p. 587.)

"An agent is one who represents another, called the principal, in dealings with third persons.  [Citation.]  In California, an agency is either actual or ostensible.  [Citation.]  Actual agency arises when the principal's conduct causes the agent reasonably to believe that the principal consents to the

8

agent's act on behalf of the principal. [Citations.] Ostensible agency arises when the principal's conduct causes the third party reasonably to believe that the agent has the authority to act on the principal's behalf." (*Rogers*, *supra*, 75 Cal.App.5th at p. 1074, internal quotation marks omitted.)

"An agency, whether actual or ostensible, cannot be created by the conduct of the agent alone; rather, conduct by the principal is essential to create the agency. [Citations.] The principal must in some manner indicate that the agent is to act for the principal, and the agent must act or agree to act on the principal's behalf and subject to the principal's control. [Citations.] Thus, the formation of an agency relationship is a bilateral matter. Words or conduct by both principal and agent are necessary to create the relationship." (*Rogers*, *supra*, 75 Cal.App.5th at p. 1074, internal quotation marks, ellipses, and brackets omitted.)

As the party seeking arbitration, Lynwood bears the burden of proving Lisa was McCalebb's actual or ostensible agent. (*Rogers*, *supra*, 75 Cal.App.5th at p. 1074.) Lynwood "does not meet its burden of proving the existence of an arbitration agreement when it [fails to] present [sufficient] evidence that the purported principal's conduct caused the agent or the third party to believe that the agent had the authority to bind the principal." (*Id*. at p. 1075.)

2. *Lynwood Failed To Present Sufficient Evidence of Actual Agency*

According to Lynwood, it demonstrated Lisa was her mother's actual agent because Lisa "expressly acknowledged her authority to enter into the [arbitration] agreement on behalf of her mother. By signing the agreement on her mother's behalf,

9

[Lisa] certified and affirmatively represented she was 'authorized to act as Resident's agent in executing and delivering this arbitration agreement.'" Further, in Lynwood's view, the POLST, which was signed nine days after the arbitration agreement, "'confirmed'" Lisa was her mother's "'legally recognized decision-maker.'"

But a party seeking arbitration on an agency theory cannot meet its burden of proving the signatory acted as the principal's actual agent merely by relying on the agent's representations. It is well settled, as a general principle of contract law and in the context of arbitration agreements executed by a resident's family member upon admission to a nursing facility, that "[a] person cannot become the agent of another merely by representing herself as such." (*Pagarigan v. Libby Care Center, Inc.* (2002) 99 Cal.App.4th 298, 301 (*Pagarigan*) [adult children's signature not evidence of actual authority to enter into arbitration agreement]; accord, *Kinder*, *supra*, 91 Cal.App.5th at pp. 812-813; *Valentine v. Plum Healthcare Group, LLC* (2019) 37 Cal.App.5th 1076, 1087 (*Valentine*) [husband's signature on a line marked "resident's representative" beneath language stating the signatory had authority to enter into arbitration agreement on the patient's behalf insufficient to establish agency]; *Flores*, *supra*, 148 Cal.App.4th at p. 588 [similar].)

The POLST does not help Lynwood. As a threshold matter, because it post-dates the arbitration agreement, Lynwood needed to present evidence that McCalebb intended it to ratify Lisa's agreement to arbitration on her behalf. (See *Flores*, *supra*, 148 Cal.App.4th at pp. 588-589 [power of attorney signed after admission to facility did not ratify arbitration agreement absent facts suggesting that, by signing the power of attorney form, wife

10

intended to ratify husband's earlier agreement to the arbitration].)

In any event, even if Lisa was authorized to make certain medical decisions for McCalebb relating to life-sustaining treatment (the only subject of the POLST), this is not evidence her mother authorized Lisa to enter into the arbitration agreement. On its face, the POLST is limited to the life-saving measures Lynwood should take in the event of a medical emergency and, of course, makes no mention or reference to the arbitration agreement. As such, the POLST neither confirms Lisa was her mother's actual agent, nor retroactively authorizes Lisa to sign the arbitration agreement on behalf of her mother. As in *Pagarigan*, "Defendants do not explain how the next of kin's authority to make medical treatment decisions for the patient at the request of the treating physician translates into authority to sign an arbitration agreement on the patient's behalf at the request of the nursing home." (*Pagarigan*, *supra*, 99 Cal.App.4th at p. 302; accord, *Hogan v. Country Villa Health Services* (2007) 148 Cal.App.4th 259, 268 [emphasizing the "critical" distinction between a child admitting a parent to a facility with a durable power of attorney, and *Pagarigan* and *Goliger*, where they lacked such authority]; *Goliger v. AMS Properties, Inc.* (2004) 123 Cal.App.4th 374, 377.)[3]

---

[3] Lynwood further contends that because Lisa acknowledged her mother had capacity to make her own legal decisions, "[t]he inference is therefore compelling that McCalebb either authorized, or, at a minimum, permitted [Lisa] to sign the arbitration agreement and the other papers necessary to procure McCalebb's admission to Lynwood." But this argument suffers from the same shortcoming as the POLST: Lisa's authority to make certain medical decisions for her mother does not translate

11

Lynwood's reliance on *Tomerlin v. Canadian Indemnity Co.* (1964) 61 Cal.2d 638, 643 (*Tomerlin*) and *County First National Bank v. Coast Dairies & Land Co.* (1941) 46 Cal.App.2d 355 (*First National*) is misplaced. *Tomerlin*, an insurance coverage case, held the attorney retained by the insurer had both actual and ostensible authority to bind the insurer largely because its claims manager admitted the attorney was retained "'to represent . . . our interests in the lawsuit,'" and the insurer failed to challenge or limit any exercised authority with respect to "the question of policy coverage." (*Tomerlin,* at p. 644.) *First National* involved a promissory note executed by a company's general manager on the company's behalf. (*First National*, at p. 357.) The court held the general manager had actual and ostensible authority to bind the company because he was in "full charge of all of the company's affairs," regularly did business with the bank, and the company's board never repudiated or questioned his financial decisions. (*Id.* at p. 358.)

Relying on these cases, Lynwood argues McCalebb "took no steps to limit [Lisa's] authority" and "did not object to [Lisa]'s power to make decisions and sign documents on her behalf." But Lynwood presented no evidence McCalebb ever authorized Lisa to act as her agent or to bind her contractually, or that McCalebb was even aware that Lisa signed the arbitration agreement on her behalf. (See *Rogers*, *supra*, 75 Cal.App.5th at p. 1076 ["There was no evidence that Claude approved similar acts by Richard in the past or that Claude remained silent even though he knew

into authority to arbitrate and waive her right to a jury trial. (*Pagarigan, supra*, 99 Cal.App.4th at p. 302; accord, *Goliger v. AMS Properties, Inc*., *supra,* 123 Cal.App.4th at p. 377.)

that Richard had signed the arbitration agreement on his behalf."].)

### 3. *Lynwood Failed To Present Sufficient Evidence of Ostensible Agency*

Lynwood also presented insufficient evidence Lisa was her mother's ostensible agent. Citing Civil Code section 2317, Lynwood argues that "[o]stensible authority arises when a principal intentionally or by want of ordinary care causes a third party to believe the agent possesses certain authority." And according to Lynwood, "McCalebb's passive acceptance of [Lisa]'s active involvement in her affairs" and that "McCalebb did not object to [Lisa] signing all of the admission paperwork and the arbitration agreement" demonstrate ostensible agency. But, again, Lynwood cites no record evidence supporting these propositions. Regardless, as we explained in *Kinder, supra,* 91 Cal.App.5th at p. 816, "A defendant cannot prove a plaintiff consented to arbitration merely by showing the plaintiff stood idly by while the purported agent signed on his or her behalf." (See also *Rogers, supra,* 75 Cal.App.5th at p. 1076 [rejecting similar argument]; *Goldman v. Sunbridge Healthcare, LLC* (2013) 220 Cal.App.4th 1160, 1173 [rejecting facility's argument the patient's "silence on the matter be considered to be an adoptive admission of the arbitration agreements signed by" the patient's wife]; *Valentine, supra,* 37 Cal.App.5th at pp. 1088-1089 ["Contrary to defendants' argument, Lila's silence in this instance was insufficient to convey ostensible authority to Roy to execute arbitration agreements on her behalf."].)

4. *McCalebb's Acceptance of Medical Care Did Not Ratify the Arbitration Agreement*

Lynwood further contends McCalebb ratified Lisa's signing of the arbitration agreement by accepting the benefit of medical care from Lynwood and failing to rescind the arbitration agreement. Lynwood forfeited this argument by failing to raise it below. (See *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 68.) It also fails on the merits.

Even if the arbitration agreement was signed as part of the admission process to Lynwood, the agreement indicated that "[t]he execution of this arbitration agreement is not a precondition to receiving medical treatment or for admission to the Facility." As we held in *Kinder*, any "agreement to arbitrate cannot be inferred from the mere fact that [McCalebb] accepted treatment. Further, defendants were prohibited by statute from imposing any such condition." (*Kinder*, *supra*, 91 Cal.App.5th at p. 816; accord, Health & Saf. Code, § 1599.81, subd. (a) ["[a]ll contracts of admission that contain an arbitration clause shall clearly indicate that agreement to arbitration is not a precondition for medical treatment or for admission to the facility"].)

Lynwood relies on *NORCAL Mutual Ins. Co. v. Newton* (2000) 84 Cal.App.4th 64 (*NORCAL*), but it is inapposite. In *NORCAL*, the court concluded that a wife was bound to arbitrate under a professional liability insurance policy purchased by her husband because she received benefits of the policy by accepting a defense and demanding a litigation settlement. The court explained that although the wife was not a party to the agreement, "[I]t is clear that . . . [the wife's] demands for arbitration, along with her acceptance of a defense funded by [the

14

insurer] in the malpractice case and agreement to the settlement resulting from that defense, constituted conduct seeking the benefit, and therefore requiring acceptance of the burden, of the insurance policy." (*Id.* at p. 81.)  In other words, she "was not entitled to make use of the policy as long as it worked to her advantage, then attempt to avoid its application in defining the forum in which her dispute with NORCAL should be resolved." (*Id.* at p. 84.)

By contrast, McCalebb's passive acceptance of medical care provided by Lynwood is not evidence of her acceptance of the separate arbitration agreement.  As W*arfield v. Summerville Senior Living, Inc.* (2007) 158 Cal.App.4th 443, 450-451, explained, "[Respondent] is not trying to take advantage of certain provisions of a contract while avoiding the application of other provisions of that same contract.  Rather, [respondent] has utilized the services of the residential care facility as provided under certain admissions documents.  Those are separate agreements from the arbitration agreement—a different, optional agreement." (*Id.* at pp. 450-451.)

And as to non-recission of the arbitration agreement, as in *Valentine*, Lynwood presented no evidence that McCalebb knew the arbitration agreement existed, that Lisa signed it, or that she had a right to rescind.  (*Valentine, supra,* 37 Cal.App.5th at p. 1090 [rejecting failure-to-rescind ratification argument because "[t]here is no evidence Lila knew the arbitration agreements existed, that Roy signed them, or that she had a right to rescind them.  The fact Lila or Roy did not rescind the agreements, without more, does not indicate Roy signed them as Lila's agent"]; *Rogers, supra,* 75 Cal.App.5th at pp. 1076-1077 [similar].)

15

C.	*The Trial Court Correctly Ruled the Individual Wrongful Death Claims Brought by Lisa and Lashawn Were Not Subject to Arbitration*

Lynwood argues the individual wrongful death claims are subject to the arbitration agreement under Code of Civil Procedure section 1295.  This argument fails because Lynwood presented no evidence McCalebb signed the arbitration agreement directly or through Lisa as her agent (which would have bound McCalebb's estate and heirs), or that Lisa and Lashawn signed the arbitration agreement in their individual capacities.

"Unlike some jurisdictions wherein wrongful death actions are derivative, Code of Civil Procedure section 377.60 'creates a *new cause of action* in favor of the heirs as beneficiaries, based upon their own independent pecuniary injury suffered by loss of a relative, and distinct from any the deceased might have maintained had he survived.  [Citations.]'" (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 283; accord, *Hass v. RhodyCo Productions* (2018) 26 Cal.App.5th 11, 25 ["wrongful death claims 'are not derivative claims but are independent actions accruing to a decedent's heirs'"].)

Lynwood contends the arbitration agreement encompasses the individual wrongful death claims because it purports to bind "the parties hereto, including the heirs, representative, executors, administrators, successors, and assigns of such parties."  Citing *Ruiz v. Podolsky* (2010) 50 Cal.4th 838 (*Ruiz*), Lynwood argues that "[n]on-signatories to an arbitration agreement may be bound by the agreement's terms when the agreement, as here, complies with Code of Civil Procedure section 1295."  Section 1295, subdivision (a), deals with "[a]ny contract for medical services

16

which contains a provision for arbitration of any dispute as to professional negligence of a health care provider."

In *Ruiz, supra*, 50 Cal.4th 838, the patient signed an arbitration "agreement [that] provided for the arbitration of any malpractice claims. . . . The agreement further provided that it was the intention of the parties 'that this agreement binds all parties whose claims may arise out of or relate to treatment or service provided by the physician including any spouse or heirs of the patient and any children, whether born or unborn, at the time of the occurrence giving rise to the claim.' Elsewhere the agreement specifically provided for arbitration of wrongful death and loss of consortium claims." (*Id*. at pp. 841-842.) The Supreme Court held "that all wrongful death claimants are bound by arbitration agreements entered into pursuant to section 1295, at least when . . . the language of the agreement manifests an intent to bind these claimants." (*Id*. at p. 841.) "'Section 1295 was enacted as part of the Medical Injury Compensation Reform Act of 1975 (MICRA). . . . The purpose of section 1295 is to encourage and facilitate arbitration of medical malpractice disputes,'" because it "furthers MICRA's goal of reducing costs in the resolution of malpractice claims and therefore malpractice insurance premiums." (*Id*. at pp. 843-844.)

But this case is distinguishable from *Ruiz* because McCalebb did not sign the arbitration agreement (either directly or through an agent) and thus expressed no intent to arbitrate claims brought on her behalf. (See *Goldman v. Sunbridge Healthcare, LLC, supra*, 220 Cal.App.4th at p. 1177 ["Unlike the circumstance in *Ruiz*, Edward did not agree to arbitrate and thus did not bind any successor in interest to arbitrate claims on his behalf."].)

17

Lisa signed the arbitration agreement as "Resident Representative" and not in her individual capacity. And there is no language in the arbitration agreement indicating the "Resident Representative" agrees to arbitrate claims brought in his or her individual capacity. (See *Goliger v. AMS Properties, Inc.*, *supra*, 123 Cal.App.4th at p. 377 ["We now turn to arbitration of Binshtock's personal claim for her mother's wrongful death. Binshtock signed the arbitration forms in her capacity as her mother's 'responsible party.' Nothing on the arbitration form indicates she signed in her personal capacity."]; accord, *Fitzhugh v. Granada Healthcare & Rehabilitation Center, LLC* (2007) 150 Cal.App.4th 469, 471, 474 [husband's wrongful death claims not subject to arbitration in absence of evidence he signed arbitration agreements in individual capacity].) As noted above, Lashawn did not sign any documents and could not have agreed to arbitrate her individual claims.

*Ruiz* is also distinguishable because the wrongful death allegation in this complaint is primarily based on elder "abuse and neglect," not professional malpractice. (*Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 842 (*Avila*) ["If the primary basis for the wrongful death claim sounds in professional negligence as defined by MICRA, then section 1295 applies. If, as plaintiffs claim here, the primary basis is under the Elder Abuse and Dependent Adult Civil Protection Act . . . then section 1295 does not apply and neither does *Ruiz's* exception to the general rule that one who has not consented cannot be compelled to arbitrate."].

In *Daniels v. Sunrise Senior Living* (2013) 212 Cal.App.4th 674 (*Daniels*), a woman was admitted to a residential care facility for the elderly. (*Id.* at p. 677.) Upon admission, her daughter

and attorney in fact, Daniels, signed a residency agreement with an arbitration clause binding the parties and their "'spouse, heirs, representatives, executors, administrators, successors and assigns.'" (*Id*. at p. 678.)  After her mother's death, Daniels brought survivor and wrongful death claims.  (*Ibid*.)  In affirming denial of arbitration, the court explained *Ruiz* did not apply to wrongful death claims:  "More generally, we disagree that *Ruiz* should be extended to arbitration agreements not governed by section 1295, or that are entered into with a person other than a health care provider for claims other than medical malpractice." (*Id*. at p. 683; see also *Valentine*, *supra*, 37 Cal.App.5th at p. 1084 ["a patient of a skilled nursing facility can bind her heirs to arbitrate wrongful death claims arising only from medical malpractice, but not from elder abuse"].)

Lynwood argues plaintiffs' negligence cause of action, partially based on the allegation Lynwood did not provide "decedent proper medical treatment," triggers section 1295.  But this reads the complaint too broadly.  The allegation Lynwood cites is actually from the elder abuse and neglect cause of action (incorporated by reference into the negligence claim).  Although there is "at least some overlap between" professional negligence and elder abuse (*Avila*, *supra*, 20 Cal.App.5th at p. 843), in our view this case is pleaded as one for wrongful death, negligence, and elder abuse primarily based on neglect.  This is not a case where plaintiffs allege Lynwood's "staff actively undertook to provide treatment" and did so in a substandard manner.  (See *Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 408.)  Nor is the complaint "replete with references to the extensive medical care . . . received."  (See *Alexander v. Scripps Memorial Hospital La Jolla* (2018)

19

23 Cal.App.5th 206, 223.)  Rather, the complaint alleges "the general neglect . . . included allowing [McCalebb] to become malnourished, dehydrated and subject to bed sores, as well as the separate failure to take adequate measures to protect decedent from contracting Covid-19, were all contributing factors in causing [her] demise."

As *Avila* explains, such allegations "'"speak[] not of the *undertaking* of medical services, but of the failure to *provide* medical care."' [Citation.]"  (*Avila, supra,* 20 Cal.App.5th at p. 843; accord, *Sababin v. Superior Court* (2006) 144 Cal.App.4th 81, 89 ["Our Supreme Court teaches that neglect under the Act 'refers not to the substandard performance of medical services but, rather, to the "failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults, regardless of their professional standing, to carry out their custodial obligations." [Citation.]  Thus, the statutory definition of "neglect" speaks not of the *undertaking* of medical services, but of the failure to *provide* medical care."'].)

In sum, Lynwood failed to establish Lisa had actual or ostensible authority to bind McCalebb to arbitration, and it also failed to establish Lisa or Lashawn agreed to arbitrate their individual wrongful death claims.  The trial court properly denied the petition for arbitration.[4]

---

[4]  Because we affirm the trial court's decision that plaintiffs are not subject to arbitration, we need not address the parties' arguments under Code of Civil Procedure section 1281.2.  That statute authorizes a trial court to deny a petition for arbitration when not all parties are subject to arbitration and there exists the possibility of a conflicting ruling on common issues of law or fact.

20

## DISPOSITION

The order denying the petition to compel arbitration is affirmed.  Respondents are awarded their costs on appeal.


MARTINEZ, J.

We concur:



PERLUSS, P. J.



FEUER, J.